Edward DeSANTIS and Risk Deterrence, Inc., Appellants,

v.

The WACKENHUT CORPORATION, Appellee.

No. C14–85–804–CV.

Court of Appeals of Texas, Houston (14th Dist.).

April 23, 1987.
Rehearing Denied May 28, 1987.

Jon Mercer, Theodore C. Flick, Houston, for appellants.

William H. Bruckner, Roxella T. Cavazos, Houston, for appellee.

Before DRAUGHN, JUNELL and ELLIS, JJ.

## OPINION

JUNELL, Justice.

Edward DeSantis and Risk Deterrence, Inc. (appellants) appeal from a judgment granting a permanent injunction and attorney's fees to The Wackenhut Corporation (appellee) in a case involving the alleged breach of a non-compete agreement. We affirm the judgment of the trial court.

Appellants raise nineteen points of error on appeal. They argue that Wackenhut is not entitled to the injunction because it failed to prove irreparable injury and because the trial court erred in concluding that irreparable injury was presumed due to Florida "procedural" law. They allege that the non-compete agreement is an illegal and unenforceable restraint of trade under Texas law and that Wackenhut failed to prove the agreement was reasonably necessary to protect its business or that it was indeed breached. Appellants also challenge the denial of their counterclaims for

damages, the grant of summary judgment on their tortious interference issue and the issuance of a directed verdict on their fraud and estoppel issues. Finally, appellants argue that the cumulative effect of the trial court's erroneous evidentiary rulings and trial administration was such as to deny appellants' right to due process and a fair trial by jury as provided by the Texas Constitution.

Edward DeSantis, who had both CIA and private industry security experience, was employed by The Wackenhut Corporation in August 1981 as area manager of the Houston office. As a condition of employment, DeSantis was required to sign a non-compete agreement. The agreement precluded him from engaging in any business or other activity that is competitive with the business conducted by Wackenhut within the geographical limits of the area office (a forty-county area including and surrounding Harris County) for a period of two years from his date of termination. The agreement also specified that DeSantis was not to disclose the list of Wackenhut's clients nor was he to divulge confidential or proprietary information. The parties further agreed "that any questions concerning interpretation or enforcement of this contract shall be governed by Florida law."

On March 15, 1984, DeSantis resigned from the company under threat of termination. He contends that he was forced out after disagreements with the head office about the profitability of the Houston office. Wackenhut contends that the resignation resulted from an unethical business solicitation by DeSantis. Following his resignation, DeSantis bought into a company which marketed security electronics, and he also formed Risk Deterrence, Inc. (RDI) to provide security consulting services and, ultimately, security guard services to a limited clientele.

In April 1984 DeSantis sent out letters announcing his new ventures to twenty or thirty companies, over one-half of which were Wackenhut clients. To the letters to Wackenhut clients he added a postscript disclaiming any intent to interfere with existing Wackenhut contracts. In October 1984 Marathon Oil Company notified Wackenhut that it was terminating its guard service contract with Wackenhut and then signed five-year security consulting and guard service contracts with RDI. At about the same time, another Wackenhut client, TRW-Mission Drilling Products, became unhappy with Wackenhut's service and requested that RDI submit a bid for the TRW security guard contract. When the temporary injunction was issued in this case, Marathon terminated its contracts, and DeSantis withdrew his TRW proposal from consideration.

Wackenhut sued for injunctive relief and monetary damages for breach of the non-compete agreement and tortious interference with contract and business relations. DeSantis and RDI counterclaimed. The trial court granted Wackenhut partial summary judgment on defendants' tortious interference counterclaim, and, later, a directed verdict on defendants' fraud and estoppel counterclaims. At trial Wackenhut withdrew its claim for damages based on tortious interference.

The trial court submitted five special issues to the jury. The jury found that DeSantis had breached the non-compete agreement by engaging in a competing business but had not breached the agreement by soliciting Wackenhut employees (Special Issue No. 1); that Wackenhut would not suffer irreparable harm were DeSantis not prevented from breaching the agreement (Special Issue No. 2); that Wackenhut had not treated DeSantis unfairly during his employment (Special Issue No. 3); that $18,000.00 would compensate RDI for the loss of the Marathon and TRW accounts (Special Issue No. 4); and that DeSantis had suffered no actual damages (Special Issue No. 5).

The trial court disregarded the jury's answers to Special Issues Nos. 2 and 4 and entered judgment for Wackenhut. DeSantis was permanently enjoined from competing with Wackenhut for two years; however, based on testimony in the temporary injunction hearing, the geographical area was reduced from forty counties to thirteen. He also was enjoined from disclosing

client lists or divulging confidential information. RDI was permanently enjoined from divulging or using any confidential or proprietary information acquired through DeSantis by reason of his employment with Wackenhut. The company also was enjoined from employing DeSantis during a two-year period beginning March 29, 1984, in any capacity or for the performance of any activities that are competitive with the business conducted by Wackenhut in the designated thirteen counties. The permanent injunction expired on March 29, 1986.

In their first eight points of error appellants attack the granting of the permanent injunction. In point of error two they allege that the non-compete agreement is an illegal and unenforceable restraint of trade under both the common law and the Texas Free Enterprise and Antitrust Act of 1983, Tex.Bus. & Com.Code Ann. §§ 15.01–15.40 (Vernon Supp.1987). Underlying appellants' argument is their assertion that, contrary to the agreement that any questions concerning interpretation or enforcement of the contract were to be governed by Florida law, Texas law should apply.

 The parties clearly agreed that Florida law would govern the terms of this agreement. An express agreement of the parties that the contract is to be governed by the laws of a particular state will be given effect if the contract bears a reasonable relation to the chosen state and no countervailing public policy of the forum demands otherwise. *First Commerce Realty Investors v. K–F Land Co.*, 617 S.W.2d 806, 808–09 (Tex.Civ.App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.); *Woods-Tucker Leasing Corp. of Georgia v. Hutcheson—Ingram Development Co.*, 642 F.2d 744, 746, 750 (5th Cir.1981); Tex. Bus. & Com.Code Ann. § 1.105 (Vernon Supp.1987). The State of Florida has a reasonable relation to the non-compete agreement as Wackenhut's corporate headquarters are located in Coral Gables, Florida; DeSantis was interviewed and hired there; and the management of the Houston office seems to have been closely supervised from there. Furthermore, no overriding public policy of the State of Texas

prohibits the application of Florida law. Non-compete agreements that do not impose upon the employee any greater restraint than is reasonably necessary to protect the business and good will of the employer have been enforced in this state. *Weatherford Oil Tool Co. v. Campbell*, 161 Tex. 310, 340 S.W.2d 950, 951 (1960). The recent Supreme Court decision in *Hill v. Mobile Auto Trim, Inc.*, 725 S.W.2d 168 (1987), cited by appellants in a post-submission brief, does not vitiate such reasonable agreements. In that case the supreme court specified four criteria that a covenant not to compete must meet in order to be deemed reasonable and then found that the particular covenant at issue, which was contained in a franchise agreement, did not meet several of those criteria. *Id.* at 170–71.

Neither does the Texas Free Enterprise and Antitrust Act establish a public policy which prohibits the application of Florida law in this case. As will be discussed at greater length in our response to points of error thirteen through sixteen, contrary to appellants' assertion, that act does not render non-compete agreements unlawful in Texas.

Based on the foregoing discussion, the parties' agreement to be governed by Florida law should be given effect. Accordingly, Texas law is inapplicable (except to the extent discussed above), and point of error two is overruled.

In point of error three appellants declare the non-compete agreement to be overbroad and unreasonable. Although Florida law recognizes the common law prohibition against agreements in restraint of trade, it permits, by statute, the limited use of covenants not to compete. Fla.Stat. § 542.33 (1987); *Silvers v. Dis-Com Securities, Inc.*, 403 So.2d 1133, 1135 (Fla. 4th DCA 1981). The statute provides that an agreement not to compete "within a reasonably limited time and area . . . and so long as such employer continues to carry on a like business therein" is enforceable by injunction. Fla.Stat. § 542.-33(2)(a) (1987). The only authority the court possesses over the terms of the agreement is to determine the reasonableness of its time and area limitations. . More

specifically, the court is not empowered to refuse to give effect to such a contract on the basis of a finding that enforcement of its terms would produce an unjust result in the form of an overly burdensome effect upon the employee. *Twenty Four Collection, Inc. v. Keller,* 389 So.2d 1062, 1063 (Fla. 3rd DCA 1980), *pet. rev. dismissed,* 419 So.2d 1048 (Fla.1982); *Rollins Protective Services Co. v. Lammons,* 472 So.2d 812, 814 (Fla. 5th DCA 1985).

A prerequisite for enforceability is that the covenant appear on its face to be reasonable. If it does so appear, then the burden shifts to the defendant to plead and prove that it is not reasonable on the facts of the particular case. *Silvers,* 403 So.2d at 1136. The trial court found that the non-compete agreement between DeSantis and Wackenhut was reasonable as to time (two years) but unreasonable as to area (forty counties).

■ Wackenhut's Houston office served forty counties, and as area manager DeSantis had responsibility for that entire area—responsibility which included customer contact, business solicitation and contracting. That, in turn, allowed him access to customer lists and confidential information such as bidding procedures, pricing and strategy. Some limitation on the area in which he could compete with Wackenhut was therefore reasonable. The trial court found, however, that Wackenhut actually did business in only thirteen of the forty counties and modified the injunction accordingly.

We note that a Florida court upheld the enforcement of the same non-compete language in *Maimone v. Wackenhut Corp.,* 329 So.2d 332 (Fla. 3rd DCA 1976). Presumably that court found the agreement to be reasonable on its face. We also note that DeSantis is not prohibited from engaging in those aspects of the security business that Wackenhut does not perform in the Houston area. His affiliation with Texas Security Alarms, which marketed security electronics, is one such example. Wackenhut did not object to that activity; it was only when DeSantis apparently solicited Wackenhut clients and secured at least one

of them that the company filed for an injunction. For these reasons, the covenant not to compete is reasonable as reformed.

In their fourth point of error appellants claim that Wackenhut failed to sustain its burden to prove that DeSantis had "breached" the agreement. Appellants claim Wackenhut's officers testified that a breach is a solicitation of customers or employees that causes a loss by Wackenhut. Appellants also claim that this restricted definition of a breach is one reason why the company has not sought to enforce its non-compete agreement against other employees who have quit and then directly "competed" with Wackenhut. Appellants state that either the agreement was illegal and could not be actionably breached or a "breach" must have been based on DeSantis' solicitation of Wackenhut's customers to the extent of causing loss or injury. Appellants then cite the testimony of security managers of companies allegedly solicited by DeSantis to the effect that he did not solicit their business and that any losses suffered by Wackenhut were due to a deterioration in its services to its clients rather than to DeSantis' interference.

The agreement prohibited DeSantis from engaging in any competing business or other activity (including but not limited to solicitation of clients and employees). Wackenhut sued on the basis of that agreement, alleging as a breach, DeSantis' "contact with Wackenhut's customers to solicit or recruit their business." In presenting its case, the company offered into evidence letters DeSantis sent out announcing his new venture. Many of those letters were sent to Wackenhut clients. While DeSantis disavowed any intent to interfere with contracts "in force," he did ask that his new company be considered regarding those contracts "coming up for consideration in the not too distant future." DeSantis also testified that his plans for his new company, RDI, included security consulting and a select group of clients for guard services. He did not view his activities as a concerted effort to divert any of Wackenhut's customers.

■ The jury was asked whether it found from a preponderance of the evidence that DeSantis breached the agreement either by engaging in a competing business or by soliciting Wackenhut employees. The word "breach" was defined, in part, as the failure to perform any promise which forms a whole or part of any agreement, including the refusal of a party to recognize the existence of an agreement or the doing of something inconsistent with its existence. The jury found a breach as to the competition issue. The evidence supports the jury's finding, as well as the allegation contained in Wackenhut's pleadings. We find, therefore, that Wackenhut sustained its burden of proof concerning the breach, and point of error four is overruled.

Appellants next assert that the definition and instruction in Special Issue No. 1 (defining the nature of competition which constitutes a breach of the agreement) is far broader than intended by the parties; accordingly, the jury's affirmative answer does not support the judgment. To reiterate, the first part of Special Issue No. 1 asked the jury if DeSantis had breached the non-compete agreement by engaging in a competing business. The court also instructed the jury "that the business of the defendant is competitive with the business of the plaintiff if each company endeavors to furnish the same or similar services to the same or similar prospective clients by the offer of better or more favorable terms, conditions, prices or services than its rival. Similarity of purpose with diversity of method is the essence of competition."

Appellants argue that the evidence at trial dealt with a restricted definition of competition—solicitation of customers—rather than the much broader "engaging in a competing business." The result, according to appellants, is that the only breach found by the jury is by conduct contrary to the overly broad, hence unenforceable, provision in the agreement.

■ We have previously determined that the non-compete agreement is reasonable as reformed. Furthermore, it is apparent that the court's instruction to the jury describes competition very similarly to what appellant claims the evidence covered—solicitation of clients. "[E]ach company endeavor[ing] to furnish the same or similar services to the same or similar prospective clients *by the offer of better or more favorable* terms, conditions, prices or services than its rival" is synonymous with solicitation of clients. We find no error in the court's instruction and thus overrule point of error five.

In points of error six, seven and eight appellants allege that Wackenhut failed to sustain its burden to prove the non-compete agreement was reasonably necessary to protect its business and interests from DeSantis; that any implied finding that it was so necessary is supported by no evidence, insufficient evidence and/or is against the great weight and preponderance of the evidence; and that the court erred in refusing to submit a special issue asking if the non-compete agreement was reasonably necessary to protect Wackenhut's interests.

■ As discussed in point of error three, Florida law, which we have determined governs this agreement, requires only that a non-compete agreement appear reasonable on its face as to its time and area limitations. *Silvers,* 403 So.2d at 1136. There is no requirement that a plaintiff prove the agreement was reasonably necessary to protect its interests. Therefore, Wackenhut had no burden of proof on this issue; the trial court presumably made no implied finding regarding same; and, finally, the court was not required to submit a special issue asking if the agreement were reasonably necessary to protect Wackenhut's interests. Points of error six, seven and eight are thus overruled.

Appellants' first point of error—that Wackenhut failed to establish its entitlement to permanent injunctive relief—appears to state in general terms the errors alleged in points of error two through eight. Those having been considered and overruled, point of error one also is overruled.

In points of error nine through twelve appellants argue that the trial court erred

in granting the injunction because Wackenhut failed to prove irreparable injury; the court erred in disregarding the jury's failure to find irreparable injury as this was a material fact issue to be determined by the jury; the court's finding of irreparable injury is not supported by the evidence; and the court mistakenly concluded that in a Texas injunction proceeding, irreparable injury is presumed because of Florida "procedural" law.

In its judgment the trial court stated that the jury's finding that Wackenhut would suffer irreparable injury should be disregarded because it was immaterial, not within the province of the jury and/or not supported by probative evidence. As regards immateriality, the court stated:

> Under Florida law, which the parties agreed would govern the interpretation and enforcement of the no-compete agreement, irreparable harm need not be proven but is presumed upon the establishment of a breach of contract. Thus, the issue was not a controlling question for the jury and therefore the jury's finding should be disregarded.

The trial court correctly stated Florida law on this subject. In an action for injunctive relief, irreparable injury may be presumed upon proof of breach of a valid covenant not to compete. *Capraro v. Lanier Business Products, Inc.*, 466 So.2d 212, 213 (Fla.1985). The rationale for this rule is that the practical difficulties of proving irreparable harm would delay immediate injunctive relief—the essence of such suits and often the only effectual relief—and thus diminish the efficacy of covenants not to compete. *Capraro*, 466 So.2d at 213; *Graphic Business Systems, Inc. v. Rogge*, 418 So.2d 1084, 1086 (Fla. 2nd DCA 1982). The rule appears to hold true in proceedings for both temporary and permanent injunctions.

> Moreover, the ordinary requirement to show irreparable harm applies to permanent as well as temporary injunctions, and no court has applied the rule of *Uni-Chem Corp.* [*v. Maret*, 338 So.2d 885 (Fla. 3d DCA 1976)] [which stated, prior to the Florida Supreme Court decision in *Capraro*, that the statute did not

negate a showing of irreparable harm] to the entry of a permanent injunction on this subject.

*Graphic Business Designs, Inc.*, 418 So.2d at 1087.

At issue in this case, however, is whether Florida law should be applied by a Texas court in this instance. Appellant argues that the presumption of irreparable injury is procedural and that, as a general rule, the procedural law of the forum state governs the procedure and remedies sought in its courts. Traditionally, rules designed to regulate the conduct of a trial are procedural while those designed to affect decision of the issue are substantive. *Holt Service Co. v. Modlin*, 163 Ga.App. 283, 293 S.E.2d 741, 743 (1982); Restatement (Second) of Conflict of Laws §§ 133, 134 (1969).

■ Whether a law is to be categorized as procedural or substantive, and therefore which state's law is to govern, is often difficult to determine. An exception to the general rule discussed above results when a foreign state's rule involving a presumption or burden of proof is intended to affect the parties' substantive rights rather than merely to regulate procedure. Where the enforcement of such rule will not violate the public policy of the forum state, such rule, rather than the law of the forum, is controlling. Annot., 35 A.L.R.3d 289, 303 (1971). *See* Restatement (Second) of Conflict of Laws §§ 133, 134, comments (1969). This principle was applied by a federal court in *Lykes Bros. S.S. Co. v. Esteves*, 89 F.2d 528 (5th Cir.1937). The court stated that where a substantive right is created by the law of the place of an injury and, as an integral part of such right, a presumption of evidence is also created in aid of the enforcement of the right, such presumption is regarded as a matter of substance and will be given effect in the forum when the presumption is not in conflict with public policy in the forum state and no practical obstacle appears. *Id.* at 530. This exception applies when the substantive right conferred by the statute of the place of injury and the presumption created in aid of it are

so inseparably bound that application of the usual procedural law of the forum would substantially impair the enforcement of the right. *Id.*

In Florida, the legislature has passed a statute permitting the limited use of covenants not to compete. That statute allows such agreements to be enforced by injunction. In turn, the Florida courts have created a presumption, that irreparable injury may be presumed upon proof of breach of a valid covenant not to compete, to aid in the enforcement of that substantive right. As the Florida Supreme Court has concluded, "To require that a plaintiff prove irreparable injury as a prerequisite to injunctive relief, as petitioner urges, would, in most instances, defeat the purpose of the plaintiff's action." *Capraro*, 466 So.2d at 213. It is thus clear that to require a showing of irreparable injury would, in Florida's eyes, substantially impair the enforcement of valid non-compete agreements by injunctive relief. We do not see that adoption of this presumption by a Texas court would offend the public policy of this state, given that reasonable non-compete agreements are enforceable in Texas. We therefore hold that Wackenhut was not required to prove irreparable injury and that the trial court correctly disregarded as immaterial the jury's finding in Special Issue No. 2. Points of error nine through twelve are overruled.

In points of error thirteen through sixteen appellants allege that the court erred in disregarding the jury's finding of damages in Special Issue No. 4 and in denying appellants' counterclaims for same because the non-compete agreement violated the Texas Free Enterprise and Antitrust Act and is void and unenforceable; that damages were recoverable under the statutory and common law causes of action; and that the jury's damage findings were inadequate.

In response to Special Issue No. 4, the jury found that $18,000 would compensate RDI for the loss of net profits on the Marathon Oil Company and TRW-Mission Drilling Products accounts proximately caused by Wackenhut's enforcement of the non-compete agreement. In answer to Special Issue No. 5, the jury found that DeSantis had suffered no damages caused by that enforcement. In its judgment the trial court determined that the answer to Special Issue No. 4 was immaterial and should be disregarded in light of the jury's finding that DeSantis had breached the non-compete agreement, "it being well established in Texas that one cannot recover for that which one could not legally perform."

Non-competition agreements are not per se an illegal restraint of trade under either Texas common law or statutory law. They shall be upheld in Texas and are not against public policy unless they are unreasonable. *Hartwell's Office World, Inc. v. Systex Corp.*, 598 S.W.2d 636, 639 (Tex.Civ. App.—Houston [14th Dist.] 1980, writ ref'd n.r.e.). Appellants, however, point to the inclusion in the Texas Free Enterprise and Antitrust Act of 1983 of "services" as "trade" or "commerce," restraint of which by contract, combination or conspiracy is unlawful, Tex.Bus. & Com.Code Ann. §§ 15.03, 15.05 (Vernon Supp.1987), and argue that because the legislature included no distinction as to the reasonableness of the restraint, non-competition contracts are therefore absolutely prohibited by the act.

Appellants' interpretation is at odds with a discussion of the act in a law review article cited by them. Statute Note, *The Texas Free Enterprise and Antitrust Act of 1983: A Step Into the Present*, 36 Baylor L.Rev. 733 (1984). In that discussion the author states that the Texas Free Enterprise and Antitrust Act of 1983 was enacted in an effort to update Texas' antitrust law by bringing it more in line with federal law. *Id.* at 736. Federal law construes section 1 of the Sherman Act, 15 U.S.C. § 1 (1976) to prohibit only those activities which "unreasonably" restrain trade, an approach which allows a court to evaluate the overall anticompetitive effect of an activity in a particular market on a case-by-case basis. *Id.* at 734–35. The author notes that "[t]he close tracking of federal law has led to the replacement of the old Texas 'laundry list' of violations with a more flexible 'rule of reason' analy-

sis of alleged prohibited conduct." *Id.* at 756. It is thus clear that reasonableness is still a factor in determining the validity of a non-compete agreement even under the TFEAA and that such agreements are not absolutely prohibited by the Act. As the agreement at issue herein is reasonable, we find that the trial court correctly denied appellants' damage claims. Damages for De Santis and RDI were not an issue, and the trial court correctly disregarded the jury's finding in Special Issue No. 4. For these reasons, points of error thirteen through sixteen are overruled.

In point of error seventeen appellants allege that the trial court erred in granting summary judgment on appellants' tortious interference counterclaim because there existed genuine issues of material fact. However, we are unable to review this point.

■■■■■ In support of its motion for partial summary judgment on the tortious interference claim, Wackenhut incorporates by reference various pleadings and "attached exhibits and *affidavits.*" In that section of the motion where Wackenhut asserts that it is entitled to judgment as a matter of law on that claim, reference is made to "the Memorandum of Law in Support of Motion for Summary Judgment and attached *affidavit.*" Also, appellants' response to Wackenhut's motion refers to "the *affidavit* of Jonathan C. Wilson attached as Ex. 'D' to the Memorandum supporting Plaintiff's Motion for Partial Summary Judgment." That affidavit, which apparently was Wackenhut's summary judgment proof on the tortious interference issue, has not been included in the record on appeal. Without Wackenhut's summary judgment proof, we are unable to review whether the company conclusively proved its defense of privilege or whether that claim was controverted by DeSantis to the extent that a fact issue did indeed exist. When the summary judgment record is incomplete, the omitted documents are presumed to establish the correctness of the judgment. *DeBell v. Texas General Realty, Inc.*, 609 S.W.2d 892, 893 (Tex.Civ.App. —Houston [14th Dist.] 1980, no writ).

Therefore, point of error seventeen is overruled.

Appellants claim in point of error eighteen that the trial court erred in granting a directed verdict on appellants' fraud and estoppel counterclaims because there was probative evidence supporting each element of fraud and the issue therefore should have been submitted to the jury.

■■■■ An instructed verdict is proper when the evidence is insufficient to raise an issue of fact as to one or more fact propositions which must be established for the opponent to be entitled to judgment. *Watts v. St. Mary's Hall, Inc.*, 662 S.W.2d 55, 59 (Tex.App.—San Antonio 1983, writ ref'd n.r.e.). A defendant (in this case plaintiff, who defended against defendant's counterclaim) is entitled to an instructed verdict if in plaintiff's theory of recovery there is at least one fact proposition, constituting a component element, asserted by plaintiff, as to which the plaintiff's evidence is so meager or the defendant's evidence so compelling that reasonable men could not differ as to the conclusion that such proposition is not established. *Id.* The evidence must be viewed most favorably to the non-movant. *Id.*

Appellants admit that the evidence supporting the fraud comes primarily from DeSantis. DeSantis testified that he met alone with George Wackenhut, Wackenhut's chairman, for about forty-five minutes during his first trip to interview with the company. At that time he was actively seeking a better job. According to DeSantis, Wackenhut spoke of bringing in a small group of younger professionals to help his son "move the company into the future," and thought DeSantis might be one of those professionals. They discussed assignments he could fill while he learned about the company, particularly its "bread and butter" operation, the security guard business. Once he learned that business, he could be moved quickly into the next stage—a position at the corporate level in Coral Gables. DeSantis also was told not to plan on being in Houston for more than a year. As he stated, "Mr. Wackenhut told me that, basically, the review that he was

making of me for my position was of one for an executive position. It was not one for any other position than the one of one of those executives surrounding his son." This was DeSantis' "understanding" of the job for which he was being hired. DeSantis also testified that had he not believed he was being hired for the executive position, he would not have accepted employment with Wackenhut.

George Wackenhut did not seriously dispute this testimony; however, he interpreted his meeting with and plans for DeSantis in a somewhat different light. Initially he was very impressed with DeSantis and felt if DeSantis could prove himself, he would have a fine career with the company. Wackenhut acknowledged that a lot of the top people would be retiring and thus there would be executive positions open to those who proved themselves in the field. Wackenhut stated that he made no promises to DeSantis, and he stressed several times during his testimony the company's emphasis on its people coming up through the ranks.

 Even viewed most favorably to DeSantis, his evidence is insufficient to raise a fact issue as to several elements of actionable fraud, particularly material misrepresentation, falsity and intent. *See Stone v. Lawyers Title Insurance Corp.*, 554 S.W.2d 183, 185 (Tex.1977). There is nothing wrong with assuring a potential employee that he will advance if he performs well and then refusing to advance him if he does not. For whatever reason (and that, too, is in dispute), DeSantis did not meet management's expectations and he left the company. Based on the evidence, the trial court did not err in granting a directed verdict on the fraud and estoppel claims. Point of error eighteen is overruled.

Finally, appellants argue in point of error nineteen that the cumulative effect of the trial court's erroneous rulings was such as to deny appellants a fair trial. They claim they were prevented from fully impeaching Wackenhut's witnesses and factual theories supporting its claim and from fully presenting their own contentions. Appellants cite only one example—

that the trial court refused, based on materiality, to permit them to fully develop the underlying reasons for Marathon's termination of Wackenhut's contract; however, appellants do not refer us to the place in the record where this occurred. Furthermore, review of the testimony of John Walker and Bo Matthews, Marathon employees, suggests otherwise. In response to questions by DeSantis' counsel, both men discussed at length Marathon's problems with Wackenhut following DeSantis' departure. Finally, a reading of the entire statement of facts indicates no cumulatively unfair treatment of appellant. Point of error nineteen is overruled, and the trial court's judgment is affirmed.