**PENNWELL CORPORATION,**
Appellant,

v.

**KEN ASSOCIATES, INC., Appellee.**

No. 14–02–00218–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Dec. 11, 2003.

William P. Tunell, Jr., Tulsa, OK, Jon L. Tankersley, Houston, for appellants.

Christopher L. Ashby, Michael O. Whitmire, Houston, for appellees.

Panel consists of Justices ANDERSON, SEYMORE, and EVA M. GUZMAN.

## OPINION

EVA M. GUZMAN, Justice.

In this breach of contract action, appellant, PennWell Corporation ("PennWell"), appeals a summary judgment awarding damages and attorney's fees in favor of appellee, Ken Associates, Inc. ("Ken"). By cross-appeal, Ken complains of the trial court's refusal to award statutory treble damages under the Texas Sales Representative Act (the "TSRA").[1] We affirm.

## I. FACTUAL BACKGROUND

In 1992, PennWell and Ken entered into an oral agreement wherein Ken became the exclusive sales representative of exhibition booth space at PennWell's conferences and exhibitions. Under the agreement, evidenced by a letter from a PennWell representative, Ken was to be paid a commission of 20% of the value of the exhibit space it sold. Ken's sales territory was limited to Japan. Between 1992 and 1999, Ken acted in this capacity, maintaining the business relationship apparently without problem. In 1999, however, a dispute arose between PennWell and Ken following PennWell's refusal to pay sales commissions on exhibition space sold to Mitsubishi Heavy Industries, Ltd. ("Mitsubishi") and Hitachi, Ltd., Japan ("Hitachi").

Ken filed suit against PennWell in a Texas court for breach of contract, suit on a sworn account, quantum meruit, and violations of the TSRA. Both parties moved for a traditional summary judgment:

PennWell argued the TSRA was inapplicable, and Ken moved for judgment on all of its claims. The trial court granted both motions in part, entering judgment for Ken on its breach of contract and sworn account claims for damages, attorneys' fees, and 10% judgment interest, while denying Ken's TSRA and quantum meruit claims.

On appeal PennWell contends the trial court erred in granting judgment for Ken because: (1) Japanese law applies and prohibits recovery of attorneys' fees and 10% judgment interest; (2) PennWell's affidavit sufficiently responded to Ken's sworn account claim; (3) a material fact issue existed as to the breach of contract claim; and (4) Japanese law applies to Ken's sworn account claim. By cross-appeal, Ken argues the trial court erred in denying recovery of treble damages under the TSRA.[2]

## II. STANDARD OF REVIEW

A summary judgment is proper only when a movant establishes that there is no genuine issue of material fact and he is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c). The propriety of a summary judgment is a question of law and we review the trial court's decision de novo. *Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 699 (Tex.1994); *Taub v. Aquila Southwest Pipeline Corp.*, 93 S.W.3d 451, 462 (Tex.App.-Houston [14th Dist.] 2002, no pet.). We review the summary judgment evidence in the light most favorable to the nonmovant, indulging every inference and resolving all doubts in his favor. *Sci. Spectrum, Inc. v. Martinez,*

---

1. TEX. BUS. & COM.CODE §§ 35.81–.86.

2. Ken also requests, in response to issues raised by PennWell, remand of the case for a redetermination of appellate attorneys' fees due to PennWell filing a supplemental record.

We decline to do so however, as the trial court's judgment included an award of attorneys' fees to Ken in the event of an appeal, addressing anticipated expenses incurred by Ken in prosecuting this appeal.

941 S.W.2d 910, 911 (Tex.1997); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 549 (Tex.1985). Once the movant has established a right to summary judgment, the burden then shifts to the nonmovant to raise any issues that would preclude summary judgment. *Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex.1984).

### III. ANALYSIS

In its first issue, PennWell argues Japanese law applies to the parties' dispute and the trial court erred in failing to apply Japanese substantive law. Although there is nothing in the record to affirmatively indicate which substantive law the court applied, PennWell argues the court "obviously" applied Texas law, as attorneys' fees and judgment interest in excess of 6% are not recoverable under Japanese law.

Interestingly, PennWell does not argue that Japanese law and Texas law differ in any respect regarding a breach of contract. PennWell does not contend that application of Japanese law would render a different result regarding the contract issue, nor does it make any attempt to argue the issue under Japanese law.[3] Instead, PennWell merely asserts that Ken would not be entitled to attorneys' fees and judgment interest had the trial court applied Japanese law. In response, Ken argues that PennWell's motion for judicial notice was insufficient under Texas Rule of Evidence 203 to request the court apply Japanese law, that recovery of interest and attorneys' fees are not subject to a choice of law analysis, and under either forum's laws, a breach of contract was still established.

We conclude Ken was entitled to an award of attorney's fees on its sworn account claim, a procedural matter governed by Texas law. In addition, because PennWell failed to sufficiently apprise the trial court of Japanese law regarding judgment interest or any issues in the case other than attorney's fees, we cannot conclude the trial court improperly applied Texas law in awarding those fees.

### A. Choice of Law Issues

Under Rule of Evidence 203, a party intending to raise an issue concerning foreign law must give notice in the pleadings or "other reasonable written notice," and at least thirty days before trial furnish to all parties copies of any written materials or sources the party intends to use as proof of foreign law. TEX.R. EVID. 203; *see Pittsburgh Corning Corp. v. Walters*, 1 S.W.3d 759, 769 (Tex.App.-Corpus Christi 1999, pet. denied) ("A preliminary motion is ... necessary to assure the application of the laws of another jurisdiction."). The trial court determines the laws of the foreign country, and that determination is reviewed as a question of law. TEX.R. EVID. 203; *Long Distance Int'l, Inc. v. Telefonos de Mexico, S.A.*, 49 S.W.3d 347, 351 (Tex.2001). Rule 203 is a "hybrid rule" by which presentation of foreign law to the court resembles the presentment of evidence, although it is ultimately decided as a question of law. *Long Distance Int'l*, 49 S.W.3d at 351. In determining the foreign law, the trial court can consider any material or source, whether or not admissible under the rules of evidence, including affidavits, testimony, briefs, and treatises. TEX.R. EVID. 203.

Although appearing under the subtitle "Judicial Notice" in the Texas Rules of Evidence, the procedure established under Rule 203 for presentment of

---

**3.** Indeed, in PennWell's third issue, claiming more than a scintilla of evidence was proffered to dispute Ken's contract claim, Penn- Well references only Texas law, entirely failing to address the issue under Japanese law.

foreign law is not considered a judicial notice procedure because that term refers only to adjudicative facts and not to matters of law. *Lawrenson v. Global Marine, Inc.*, 869 S.W.2d 519, 525 (Tex.App.-Texarkana 1993, writ denied). Thus, the specific procedures set forth in Rule 203 must be followed for the determination of foreign law. *Id.* Moreover, a party requesting judicial notice must furnish the court with sufficient information to enable it to properly comply with the request; otherwise, the failure to provide adequate proof results in a presumption that the law of the foreign jurisdiction is identical to that of Texas. *Pittsburgh Corning*, 1 S.W.3d at 769.

In this case, PennWell filed a Motion for Judicial Notice, submitting to the court various excerpts, totaling over 100 pages of materials, from a treatise entitled *Doing Business in Japan* and a copy of an Illinois case which makes reference, indirectly, to attorney's fees under Japanese law. In its motion, PennWell requested the court take judicial notice of Japanese law, noting that recovery of treble damages by sales representatives and an award of attorney's fees in a contract action were prohibited under that country's laws. Significantly, there was no mention in PennWell's motion concerning judgment interest or any distinctions between Japanese and Texas law regarding contract claims, nor any mention of Ken's sworn account claim.

Subject to its argument that Texas substantive and procedural law applied, Ken

also filed a motion for judicial notice of sources for Japanese law. Attached to Ken's motion were excerpts from *Martindale–Hubbell International Law Digest*, indicating attorney's fees are not recoverable under Japanese law except in tort actions, and excerpts from the *Doing Business in Japan* treatise.

Neither party presented expert witness testimony or affidavits regarding the laws of Japan. Also, there is no indication in the record that the trial court provided the parties with notice it was intending to rely on a source other than those presented and, as no such notice appears in the record, we conclude the trial court reached its decision based on the information submitted by the parties. *See Lawrenson*, 869 S.W.2d at 525; *see also Ahumada v. Dow Chem. Co.*, 992 S.W.2d 555, 558–59 (Tex. App.-Houston [14th Dist.] 1999, pet. denied).

We find PennWell's motion adequately requested the trial court take notice of Japanese law regarding attorney's fees, and the trial court had sufficient information before it regarding that issue. PennWell noted in its motion that Japanese law did not allow for an award of attorney's fees in a contract action. Although the case furnished by PennWell as evidence of its assertion was insufficient to demonstrate Japanese law, any deficiency in PennWell's proof on the issue was cured through Ken's motion, supplying the Martindale–Hubbell Digest pages evidencing attorney's fees were recoverable only in tort actions.[4] Therefore, at least with re-

---

4. Ken argues that it was PennWell's burden to prove Japanese law. We agree that PennWell had to file the motion and furnish information to the trial court regarding Japanese law on the issues presented, however this does not preclude the trial court's consideration of materials furnished by another party in the suit. As stated in Rule 203, the trial court "may *consider any material or source,*

*whether or not submitted by a party* or admissible under the rules of evidence....*" Tex.R. Evid. 203 (emphasis added). Thus, the trial court could have properly considered evidence of Japanese law supplied by Ken in its determination. Also, Ken argues that PennWell's motion was insufficient under Rule 203; however, Ken does not provide support for its assertion that PennWell was required

spect to attorney's fees, the trial court had enough information before it to ascertain Japanese law regarding that issue.[5]

■ However, although the trial court was sufficiently apprised of attorney's fees in a contract action under Japanese law, we cannot conclude that PennWell also apprised the trial court of any distinction in the laws of the two countries regarding judgment interest. First, PennWell failed to direct the trial court's attention to any distinctions regarding judgment interest in its motion. Further, although PennWell argued that judgment interest differed under Japanese law in its response to Ken's summary judgment motion, a "pleading" under Rule 203,[6] PennWell merely referenced two pages in the treatise regarding "delay damages," stating "[s]uch interest is recoverable under Japanese law at a simple interest rate of 6% annually." We cannot agree that this conclusory statement and the treatise pages sufficiently evidence Japan's judgment interest laws.

The materials furnished by PennWell do not reflect that "delay damages" under Japanese law and judgment interest under Texas law are equivalent. The referenced treatise pages, discussing contract law and entitled "Types of Damages," state the following:

> Damages for delay in the performance of a money obligation are called delay interest[ ]. Special rules governing delayed interest are set forth in Article 419 of the Civil Code:
>
> (1) The amount of damages for non-performance of a debt shall be determined by the legal rate of interest; however, in the cases where the agreed rate of interest exceeds the legal rate, the former shall prevail.
>
> (2) With regard to the damages referred to in the preceding paragraph, the obligee is not bound to prove actual damages nor may the obligor set up *vis major* as a defense.
>
> The legal rate of interest is generally five percent per annum except for obligation-duties arising out of commercial acts, in which case the legal rate is six percent per annum. Since the Interest Rate Restriction Act applies only to money obligation-duties

to submit anything further. Although Ken cites to *Pittsburgh Corning* to support its argument, in that case the only timely filed motion regarding application of another jurisdiction's law was without "any reference to or proof of that law" and was therefore insufficient to apprise the court of the foreign jurisdiction's laws. *See Pittsburgh Corning*, 1 S.W.3d at 769–70.

5. *See, e.g., Reading & Bates Constr. Co. v. Baker Energy Res. Corp.*, 976 S.W.2d 702, 706–07 (Tex.App.-Houston [1st Dist.] 1998, pet. denied) (finding affidavits from law professors on Canadian law sufficient under Rule 203, even though parties had not referenced the Rule); *AG Volkswagen v. Valdez*, 897 S.W.2d 458, 461–62 (Tex.App.-Corpus Christi, orig. proceeding), *overruled sub nom.*, 909 S.W.2d 900 (Tex.1995) (finding affidavit of German attorney familiar with German law,

translation of letter from German official regarding the law and affidavit of Arkansas law professor regarding German law sufficient under Rule 203); *Lawrenson*, 869 S.W.2d at 525 (finding motion for summary judgment and attached affidavit from English solicitor regarding English law sufficient under Rule 203); *State Nat'l Bank v. Academia, Inc.*, 802 S.W.2d 282, 290 (Tex.App.-Corpus Christi 1990, writ denied) (finding trial court had sufficient information to determine and apply correct law because party cited "with some particularly" the foreign jurisdiction's law concerning the elements of relevant causes of action).

6. *See Fisher v. Yates*, 953 S.W.2d 370, 376 (Tex.App.-Texarkana 1997), *pet. denied*, 988 S.W.2d 730 (Tex.1998) (per curiam) ("A response to a summary judgment motion is a pleading....").

arising out of loan contracts, the court may not lower the agreed interest rate. However, if such interest rate violates public order or good morals, the court may declare all or part of the agreed interest null and void.

5 Zentaro Kitagawa, Doing Business in Japan § 5.09[3] (1996) (citations omitted). Other than referencing these pages, Penn-Well failed to show how these "delay damages" under Japanese law equate to judgment interest under Texas law. PennWell failed to provide a copy of Civil Code 419 and did not offer any explanation as to the definitions under Japanese law of "money obligation" or "nonperformance of a debt." The terms used in the treatise defining "delay damages" could be interpreted as applying to a loan agreement, rather than to judgment interest. Without adequate explanation, the conclusion that these "delay damages" are only available in those cases involving loan agreements is more plausible than the conclusion they equate to judgment interest under Texas law. In sum, PennWell failed to meet its burden to prove Japanese law regarding judgment interest. Because PennWell's motion failed to request the trial court take notice of Japan's laws regarding judgment interest, and also failed to properly plead and prove judgment interest under Japanese law, the trial court was left to presume that Japan's laws were the same as Texas's laws on that issue. *See Pittsburgh Corning,* 1 S.W.3d at 769–70.

Before undertaking a choice of law analysis under Texas law, we must determine whether a conflict of law exists. *See Duncan v. Cessna Aircraft Co.,* 665 S.W.2d 414, 419 (Tex.1984); *Young Ref. Corp. v. Pennzoil Co.,* 46 S.W.3d 380, 385 (Tex.App.-Houston [1st Dist.] 2001, pet. denied) (finding no necessity to decide which state's law applied absent a conflict of law on the issues presented). Again, we note, PennWell does not argue there is any conflict in Japanese law and Texas law regarding breach of contract. The only "difference" between the laws of the two countries, properly evidenced and argued by PennWell, is that regarding the recovery of attorney's fees. PennWell asserts this difference requires we conduct a choice of law analysis. Contrarily, Ken argues the "difference" is insufficient to require a choice of law analysis because recovery of attorney's fees is remedial, not substantive. We need not reach this issue however, because as discussed below, Ken established its sworn account claim as a matter of law and is entitled to an award of attorney's fees on that claim. Further, a sworn account claim is a procedural matter governed by Texas law and is not subject to a choice of law analysis. *See Rizk v. Fin. Guardian Ins. Agency, Inc.,* 584 S.W.2d 860, 862 (Tex.1979) (citing *Meaders v. Biskamp,* 159 Tex. 79, 316 S.W.2d 75, 78 (1958)).[7]

7. Even assuming without deciding that a choice of law analysis was required due to the distinction regarding recovery of attorney's fees under Japanese law, Texas courts apply the Restatement's "most significant relationship" test to decide choice of law issues. *Hughes Wood Prods., Inc. v. Wagner,* 18 S.W.3d 202, 205 (Tex.2000); *Torrington Co. v. Stutzman,* 46 S.W.3d 829, 848 (Tex.2000); Restatement (Second) of Conflict of Laws § 6 (1971). That is, we apply the law of the forum with the most significant relationship to the particular substantive issue in question.

*Hull & Co., Inc. v. Chandler,* 889 S.W.2d 513, 517 (Tex.App.-Houston [14th Dist.] 1994, writ denied) (citing *Duncan v. Cessna Aircraft Co.,* 665 S.W.2d 414, 421 (Tex.1984)). In that analysis, those contacts regarding that substantive issue are the determinative contacts. *See Hughes Wood,* 18 S.W.3d at 205; *Hull & Co.,* 889 S.W.2d at 517; Restatement (Second) of Conflict of Laws § 188 (1971). Assuming without deciding that the forums' laws differ only with respect to attorney's fees and attorney's fees are a "substantive" issue requiring a choice of law analysis, then arguably the

## B. Sworn Account

### 1. Sworn Account and Choice of Law

In its fourth issue, PennWell argues that a conflict of law analysis should also apply to Ken's sworn account claim under Rule 185.[8] We reject PennWell's argument and conclude that a sworn account claim is a procedural issue under Texas law and is therefore, not subject to a conflict of law analysis.

■ Generally, what is a matter of substance and what is a matter of procedure is determined by the law of the forum state according to its own laws. *See Tennimon v. Bell Helicopter Textron, Inc.*, 823 F.2d 68, 70 (5th Cir.1987); *DeSantis v. Wackenhut Corp.*, 732 S.W.2d 29, 35 (Tex. App.-Houston [14th Dist.] 1987), *aff'd in part, rev'd in part*, 793 S.W.2d 670 (Tex. 1990); 12 Tex. Jur. 3d *Conflict of Laws* § 27 (1993).

■ "Rule 185 is not a rule of substantive law but is a rule of procedure with regard to evidence necessary to establish a prima facie right of recovery." *Rizk*, 584 S.W.2d at 862; *McNeil v. Pierce*, 688 S.W.2d 209, 210 (Tex.App.-El Paso 1985, writ ref'd n.r.e.) ("Rule 185 is not a rule of substantive law but is a rule of procedure with regard to evidence necessary to establish a prima facie right of recovery."). Indeed, Rule 185 is described as "a rule of evidence only, which ... allows the plaintiff to avoid the necessity of proving the correctness of the account." 1 Tex. Jur. 3d *Accounts and Accounting* § 73 (citing to *Meaders v. Biskamp*, 159 Tex. 79, 316

S.W.2d 75 (1958)). Further, Rule 185 is found in the Rules of Civil *Procedure*, further evidencing its procedural nature. Indeed, in its appellate brief, PennWell acknowledges that Rule 185 is a procedural matter governed by Texas law. PennWell fails to present any compelling arguments which would lead us to conclude otherwise.

■ Even assuming *arguendo* that a sworn account claim under Rule 185 could be characterized as "substantive," and thus, subject to a conflict of law analysis, PennWell failed to apprise the court of any Japanese law on the issue and failed to note any distinctions which may exist between Texas and Japanese law regarding a sworn account. Thus, the trial court would have been left to presume Japanese law was identical to that of Texas, resulting in application of Texas law on that claim. *See Pittsburgh Corning*, 1 S.W.3d at 769 (stating that failure to provide adequate proof of foreign law results in a presumption that the law is identical to that of Texas).

Therefore, because a sworn account is a procedural matter and procedural matters are governed by the law of the forum jurisdiction, we find that a conflicts of law analysis in the trial court was unnecessary on the sworn account claim. Accordingly, we overrule PennWell's first and fourth issues.[9]

### 2. Judgment on Ken's Sworn Account Claim

In its appellate brief, PennWell states: "The award of judgment on Ken Associ-

---

only relevant contacts regarding the issue all occurred in Texas; that is, suit was filed in Texas and attorney's fees were incurred primarily in Texas. This suggests, were a choice of law analysis required, Japanese law would not necessarily apply.

8. Tex.R. Civ. P. 185 (noting required procedure to prove suit on account).

9. In its appellate brief, PennWell states "courts in Texas routinely apply conflict of law analysis to sworn account claims," citing to *Lipschutz v. Gordon Jewelry Corp.*, 373 F.Supp. 375 (S.D.Tex.1974). However, in that case, the district court applied New York law to the breach of contract issue, but discussed the sworn account claim under Texas law. *Id.* at 384, 389–93.

ates' sworn account claim is largely a technical issue. The sworn account judgment implies that one particular affidavit filed by [Ken] did not meet the statutory requirements of [Texas Rule of Civil Procedure] 185." PennWell then argues that the court entered judgment in Ken's favor on the sworn account claim because Ken asserted PennWell's written denial under Rule 185 was insufficient. Inherent in PennWell's argument is the conclusion that the trial court entered judgment in Ken's favor because it necessarily found PennWell's denial to be insufficient. However, we disagree with this conclusion.

 In order to establish sufficient evidence to support a prima facie case in a suit on a sworn account, as well as summary disposition of the issue, the movant must "strictly adhere" to the provisions outlined in the Texas Rules of Civil Procedure. *Powers v. Adams*, 2 S.W.3d 496, 498 (Tex.App.-Houston [14th Dist.] 1999, no pet.). Rule 185, which sets forth the criteria for a suit on account, defines an open account to include "any claim . . . for personal services rendered. . . ." TEX.R. CIV. P. 185. Under this rule, a plaintiff's petition on a sworn account must contain a systematic, itemized statement of the goods or services sold, reveal offsets made to the account, and be supported by an affidavit stating the claim is within the affiant's knowledge, and that it is "just and true." [10] *Powers*, 2 S.W.3d at 498.

 Similarly, the defendant's denial must be written and supported by an affidavit denying the account. *See* TEX.R. CIV. P. 93(10), 185. Important to this ap-

peal, when a defendant files a sworn denial of the account in a form as required by Rule 185, "the evidentiary effect of the itemized account is destroyed and the plaintiff is forced to put on proof of its claim." *Powers*, 2 S.W.3d at 498; *Livingston Ford Mercury, Inc. v. Haley*, 997 S.W.2d 425, 430 (Tex.App.-Beaumont 1999, no pet.) (finding defendant's affidavit sufficient to force plaintiff to put on proof of its claim and further, finding plaintiff's "common law proof" established the elements of the claim as a matter of law). Thus, even where a defendant verifies its sworn denial to a suit on a sworn account, "[a] plaintiff can properly recover summary judgment . . . if it files legal and competent summary judgment evidence establishing the validity of its claim as a matter of law." *United Bus. Machs. v. Entm't Mktg., Inc.*, 792 S.W.2d 262, 264 (Tex.App.-Houston [1st Dist.] 1990, no writ). On the other hand, when a defendant fails to file a verified denial to a sworn account, the sworn account is received as prima facie evidence of the debt and the plaintiff/summary judgment movant is entitled to summary judgment on the pleadings. *Powers*, 2 S.W.3d at 498.

Here, in its Third Amended Answer, PennWell specially denied Ken's sworn account and in support thereof, attached the affidavit of Robert Smock, a vice president with PennWell at the time the affidavit was executed, but uninvolved with the exhibition and conferences side of the business during the period of time Ken was acting as PennWell's agent. If Smock's affidavit was insufficient under Rule 185, Ken would have been entitled to summary

---

10. In this case, there is no dispute between the parties that Ken properly pleaded the sworn account. Ken asserted in its pleadings that personal services were rendered by Ken to PennWell, systematic records had been kept, the amounts charged to PennWell were "just, . . . in accordance with the Contract, and the amounts charged reflect the usual, customary, and reasonable prices for the services that were performed," and pleading further, "all just and lawful offsets, payments and credits have been allowed," resulting in an amount owed by PennWell of $19,743.

judgment on the basis of its pleadings on the sworn account. However, assuming without deciding that Smock's affidavit was sufficient under Rule 185, the effect of the verified denial would be to destroy the evidentiary effect of the pleaded sworn account, forcing Ken to put on proof of its claim. *See Powers,* 2 S.W.3d at 499; *Livingston Ford Mercury,* 997 S.W.2d at 430. Because we find that Ken sufficiently established its claim on the sworn account by virtue of its summary judgment evidence, we do not find it necessary to address the sufficiency of Smock's affidavit.

■ In its summary judgment motion, Ken listed the elements of a sworn account, which are: (1) the sale and delivery of merchandise or performance of services; (2) that the amount of the account is "just," that is, the prices charged are pursuant to an express agreement, or in the absence of an agreement, that the charges are usual, customary, or reasonable; and (3) that the outstanding amounts remain unpaid. *See Powers,* 2 S.W.3d at 499. Ken then noted that these elements were established by its attached exhibits, evidencing: "(1) Ken Associates sold booth space for PennWell; (2) at the same commission rate PennWell had paid Ken Associates in the past as the usual, customary, and reasonable rate for that service; and (3) PennWell did not pay the commission for the above-listed sales." [11] Attached to

Ken's motion, in addition to numerous other pieces of evidence, was the affidavit of Ken-ichi Takahashi, Ken's owner, stating that under the terms of the agreement between the parties, Ken was to receive a 20% commission of the value of the exhibit space it sold on behalf of PennWell, listing each of the commissions remaining due, and stating further:

> Ken Associates has performed similar services for other companies for years. The prices/commission rates charged to PennWell are in accordance with the Agreement and are the usual, customary, and reasonable prices and rates for this type of service. Indeed, Ken Associates had previously sold booth space on behalf of PennWell and been paid the agreed-upon commission of twenty percent (20%).

Also attached to Ken's motion was a copy of a letter, dated September 18, 1992, from Ray Leung, a PennWell executive, to Ken Associates, which stated: "we would like to inform you of our decision to appoint you as our exclusive sales representative.... The commission rate will be 20% for exhibit sales...." We find this evidence sufficiently establishes Ken's sworn account claim and the trial court properly granted judgment in favor of Ken on that issue.[12] Because Ken established its right to judgment on the sworn account as a matter of

11. Ken also asserted in its motion that Robert Smock's affidavit was inadequate to "sustain its resistance to a suit on an account." However, because Ken asserted in its motion for summary judgment that it established the elements of a sworn account through its summary judgment evidence, as opposed to relying upon its pleadings, Ken was not asserting it was entitled to summary judgment solely on the basis of the allegedly inadequate affidavit and was requesting summary judgment on the basis of its proof. *Cf. Five Star Energy Corp. v. Sowell, Ogg & Hinton,* 640 S.W.2d 722, 726 (Tex.App.-Houston [14th Dist.] 1982, writ dism'd) (reversing summary judgment for

plaintiff because plaintiff had asserted entitlement to summary judgment solely on basis of allegedly inadequate affidavit, which was found to be a sufficient denial under Rules of Civil Procedure 185 and 93).

12. In addition to Mr. Takahashi's affidavit, Ken furnished other summary judgment evidence, totaling over 240 pages, establishing the necessary elements of Ken's sworn account claim. That evidence is recounted in more detail in our discussion of Ken's contract claim.

law, Ken was entitled to attorney's fees based on that claim. *See* Tex. Civ. Prac. & Rem.Code § 38.001(7). We overrule Penn-Well's second issue.

## C. Breach of Contract

We now address PennWell's claims concerning Ken's breach of contract cause of action. PennWell argues the trial court erred in granting summary judgment on Ken's breach of contract claim because PennWell presented more than a scintilla of evidence to raise a fact issue. PennWell argued the issue under Texas law, and thus, our review is limited accordingly.[13]

■ In a breach of contract suit, the plaintiff has the burden to prove: (1) the existence of a valid contract; (2) performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach. *Foster v. Centrex Capital Corp.,* 80 S.W.3d 140, 143–44 (Tex.App.-Austin 2002, pet. denied). In this case, there is no dispute the parties entered into the oral agreement whereby PennWell would pay a 20% commission on exhibition space sold by Ken to its Japanese contacts. There is also no dispute that Mitsubishi and Hitachi, Japanese companies, purchased exhibition space at PennWell's 1998 and 1999 exhibitions.

■ Ken averred by affidavit that it sold the 1998 and 1999 exhibition space to Mitsubishi and Hitachi and is entitled to the commissions. Answers to depositions by written questions propounded to Mitsubishi and Hitachi support Ken's claims, stating Ken sold them the exhibit space for both years, Ken convinced the two companies to purchase the space, and no other sales representatives were directly involved in their decision to purchase the exhibit space. However, in relation to the Mitsubishi sales, a PennWell employee, Annette Pieniazek, stated by affidavit that a Mitsibushi office administrator, Eva Steen, had booked the 1998 and 1999 space on behalf of Mitsubishi and further, Ken did not "facilitate" the Mitsubishi sale in any way. Mitsubishi however stated Steen's duties involved assisting Mitsubishi's Tokyo offices by handling exhibition logistics and coordination, and Steen had no authority to decide whether Mitsubishi would be participating in the conferences. These latter statements regarding Steen's scope of authority were not controverted by PennWell. Also, in her subsequent deposition, Pieniazek testified that in using the term "facilitate," she was distinguishing the "sales effort" from "customer service," and it was "customer service" that Ken had not provided in the Mitsubishi sale. She further stated she was unaware of the actions taken by Ken regarding the Mitsubushi account, but did acknowledge that Ken had taken "some steps with regard to the continuation of selling of (sic) booth space to Mitsubishi."

As to the Hitachi sales, PennWell claimed individuals other than Ken's sales representatives were involved in obtaining and finalizing those exhibition sales. PennWell's remedy was to unilaterally reduce Ken's percentage of commission, based on PennWell's evaluation and perception of Ken's efforts in obtaining the sales, and split the commission with other employees or agents. In a further attempt to defeat summary judgment on the breach of contract claim, PennWell also averred that Ken's sales representation contract had been terminated by the time the 1999 exhibition took place, it was PennWell's policy to pay commissions only to agents registered at the time of the

**13.** Also, our review of the treatise information provided did not reveal any distinctions regarding a breach of contract action under Japanese law, requiring a different analysis.

actual show, and thus, Ken was not owed any commission for the 1999 Hitachi sale.

PennWell also argues that summary judgment was inappropriate on the breach of contract claim because the contract terms were ill defined. We note however, there is no dispute Ken was to receive a 20% percent commission on those sales of exhibition space it made in Japan. These terms were established not only by Ken's averments, but also by the testimony of Ray Leung, the PennWell employee responsible for initially contracting with Ken. Indeed, when questioned about the "concept" of the agreement, Leung responded, "you sell, you get commission." David Johnson, another former PennWell employee testified similarly and averred that during his tenure with PennWell, "Pennwell (sic) compensated [Ken] by paying [Ken] a commission of 20% of the amount of the booth space sold. I am aware that [Ken] convinced Mitsubishi's Tokyo office to purchase the booth space. . . ." Moreover, the evidence indicates the terms of the agreement were sufficiently defined such that the parties abided by the contract without dispute for approximately seven years, establishing a course of business between the parties.

Further, PennWell contends amounts due Ken, if any, are not a matter for summary judgment because the sum is dependent on what is equitable in relation to the amount of work performed by Ken. However, PennWell has not presented any evidence that the oral contract was "value of performance" versus "results" based. It is undisputed Ken would receive a 20% commission for exhibition space sold; both Mitsubishi and Hitachi testified Ken sold them the subject space and no other sales personnel were involved. Thus, because Ken sold the space, it was owed a 20% commission whether the sale took one phone call or twenty. The degree of Ken's actual efforts in obtaining the exhibition space sales may be more relevant in a quantum meruit claim, but the court did not enter judgment under that theory of recovery.

In light of Ken's evidence, it was incumbent upon PennWell to present evidence the parties agreed to a payment schedule other than the straight 20% commission based upon space sold to raise a fact issue defeating summary judgment. No such evidence was presented. To the contrary, PennWell cites to certain corporate "policies" regarding fee-splitting and non-payment of commissions to those no longer acting as sales representatives. However, this does not defeat the existence of its agreement to pay Ken a 20% commission on exhibition space sold by Ken to Hitachi and Mitsubishi. Although PennWell did present evidence that PennWell or others had some degree of involvement in either soliciting or finalizing the details of the Mitsubishi and Hitachi exhibitions, there was no evidence controverting the clear testimony from Ken, Mitsubishi, and Hitachi, that Ken convinced these companies to buy the space and in fact sold it to them. That Eva Steen or others may have actually executed the contracts on behalf of Mitsubishi or assisted with the implementation of the sales contracts or the exhibitions does not negate the uncontroverted evidence that the decision to enter into the contracts was the result of Ken's efforts.[14]

14. PennWell also argues it has "a complete accord and satisfaction claim arising out of its correspondence with [Ken]." However, other than this conclusory statement PennWell fails to argue the issue, fails to cite any authority in support of its assertion, and fails to provide record cites regarding the evidence. By failing to properly brief this issue, PennWell has waived it on appeal and therefore, we do not address it further. TEX.R.APP. P. 38.1(h);

In sum, PennWell did not present more than a scintilla of evidence to defeat Ken's claim, and the trial court properly entered summary judgment in Ken's favor for breach of contract. PennWell's third issue is overruled.

### D. Texas Sales Representative Act

Under its two cross-points, Ken argues the trial court should have granted judgment under the Texas Sales Representative Act and awarded treble damages. At issue between the parties is whether Penn-Well and Ken met the TSRA's statutory definition of "principal" and "sales representative," and whether exhibition space constitutes a "product." *See* Tex. Bus. & Com.Code § 35.81. The TSRA defines theses terms as follows:

(1) "Commission" means compensation paid a sales representative by a principal in an amount based on a percentage of the dollar amount of certain orders for or sales of the principal's product.

(2) "Principal" means a person who:

(A) manufactures, produces, imports, or distributes a product for sale;

(B) uses a sales representative to solicit orders for the product; and

(C) compensates the sales representative in whole or in part by commission.

(3) "Sales representative" means an independent contractor who solicits on behalf of a principal orders for the

purchase at wholesale of the principal's product.

*Id.* However, while the parties disagree on whether the sale of exhibition space at a convention is a "product" capable of "distribution," we find that we need not resolve that issue because we conclude the TSRA applies only to sales representatives acting within Texas.

When a statute is clear and unambiguous, the statute must be given its common meaning. *Metromarketing Servs., Inc. v. HTT Headwear, Ltd.,* 15 S.W.3d 190, 194 (Tex.App.-Houston [14th Dist.] 2000, no pet.). Under section 35.82 of the TSRA, "A contract between a principal and a sales representative under which the sales representative is to solicit wholesale orders *within this state* must be in writing . . . and set forth the method by which the sales representative's commission is to be computed and paid." (Emphasis added). By the express terms of this provision then, the TSRA has no application to the sales representative relationship between Ken and PennWell, regardless of the nature of the sales product, because it is undisputed that Ken's sales territory encompassed only Japan.[15] *Cf. John Havlir & Assocs., Inc. v. Tacoa, Inc.,* 810 F.Supp. 752, 757 (N.D.Tex.1993) (referring to TSRA as one applying to out-of-state manufacturers who are in a business relationship with "Texas" sales representatives). Other provisions within the TSRA also indicate that its purpose is to protect those sales representatives located in Texas.

---

*Deutsch v. Hoover, Bax & Slovacek, L.L.P,* 97 S.W.3d 179, 198–99 (Tex.App.-Houston [14th Dist.] 2002, no pet.).

**15.** In its brief, Ken cites to *Metromarketing* as support for the assertion that section 35.83 is a "catchall provision," applying to all contracts that do not fit within the purview of section 35.82. However, in *Metromarketing,* the issue the court addressed was whether an oral contract could be enforced under the

TSRA. *See Metromarketing Servs.,* 15 S.W.3d at 190. Specifically, regarding section 35.83, the *Metromarketing* court stated, "[t]he . . . provision clearly encompasses unwritten agreements." *Id.* Thus, we do not agree that *Metromarketing* stands for the proposition that any sales agreement failing to comply with section 35.82 is necessarily enforceable under section 35.83.

*See* TEX. BUS. & COM.CODE ANN. §§ 35.85–.86 (providing that a non-resident principal entering into a contract subject to the TSRA is considered to be doing business in Texas for purposes of personal jurisdiction, and respectively, prohibiting waiver of TSRA provisions by attempting to "make a contract or agreement subject to the laws of another state").

Here, the evidence established that Ken was not authorized to, and did not, solicit orders within the state of Texas. The trial court did not err in refusing to grant Ken recovery under the TSRA, and Ken's two cross-points are overruled.

## CONCLUSION

PennWell's four issues are overruled, Ken's two cross-points are overruled, and the trial court's judgment is affirmed.