CV3-098-II 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-93-098-CV





MILESTONE PROPERTIES, INC.,



 APPELLANT


vs.





FEDERATED METALS CORPORATION, ASARCO, INC., AND


LONE STAR LEAD CONSTRUCTION CORPORATION,



 APPELLEES


 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT



NO. 437,569A, HONORABLE F. SCOTT McCOWN, JR., JUDGE PRESIDING 



 



 Appellant Milestone Properties, Inc. ("Milestone") sought to resurrect certain tort
claims (1) against appellees Federated Metals Corporation, ASARCO, Inc., and Lone Star Lead
Construction Corporation (collectively "appellees"), that Milestone had originally pursued in
separate lawsuits, by including the tort claims in its second amended petition in a suit for judicial
review of a Texas Water Commission hazardous waste order (the "agency appeal"). Milestone
contended that its tort claims related back to claims it had made against the appellees for
contribution and/or indemnity in its first amended petition in the agency appeal. The trial court
rendered summary judgment for the appellees, holding that Milestone's tort claims were barred
by the applicable statutes of limitations. We will affirm in part and reverse and remand in part.


PROCEDURAL BACKGROUND


 Milestone and Federated filed separate suits for judicial review of a Texas Water
Commission ("TWC") order. The order directed the two companies to clean up environmental
damage to land that Milestone had purchased from Federated. The suits for judicial review were
consolidated on December 22, 1988, to form the agency appeal. On March 14, 1990, Milestone
filed its first amended petition in the agency appeal that included a cross-claim for contribution
and/or indemnity from the appellees and the Missouri Pacific Railroad Company. On February
6, 1992, Milestone filed its second amended petition, adding the tort claims against the appellees. 
The origin of the dispute underlying the tort claims was a 1980 purchase by Milestone from
Federated of approximately fifteen acres of land in the eastern part of Houston, Texas ("the Site"). 
Federated and Lone Star Lead Construction Corporation, Federated's subsidiary, had used the Site
as a chemical dump for approximately forty years.

 On August 1, 1980, Milestone executed an option agreement to purchase the Site
from Federated. The option agreement stated that Federated had deposited "certain materials" on
the site. The agreement also provided that Federated "make available to [Milestone] upon request
all studies [Federated] has obtained with respect to said land and the nature of said materials." 
Milestone made such a request, and in response, Federated produced a two-page letter dated June
16, 1980, from Ronald A. Robbins, Supervisor of Laboratory Services for ASARCO, Federated's
parent company, addressed to Federated's Houston plant manager. The letter stated, "I do not
feel the material from the property in question is suitable for top soil or garden soil; however,
providing current slag is not being dumped there, I do not believe the material violates any
existing standards or would be unsuitable for fill." Test results from soil samples taken from the
Site were attached to the letter. Milestone did not conduct its own tests of the Site, although the
option agreement permitted it to do so. Milestone exercised the option agreement and the sale of
the Site closed on December 16, 1980.

 In a letter dated July 24, 1986, the TWC notified Milestone that the agency was
planning an investigation to assess the potential presence and effect of hazardous waste at the Site. 
The letter notified Milestone of an upcoming public meeting concerning the investigation, to be
held in Houston on August 21, 1986. A Milestone representative attended this meeting. On
November 3, 1986, the TWC gave notice by letter that the Site would be listed on the State of
Texas Registry as containing hazardous waste. On February 5, 1987, Milestone representatives
attended another public meeting held by the TWC to discuss the status of the Site. Soon after this
meeting, on February 10, 1987, the TWC informed Milestone that, as an owner of a State
Registry Site, it must deed record the Site. (2) Finally, on February 1, 1988, the TWC issued an
order directing both Milestone and Federated to remedy the environmental problems caused by
the hazardous wastes dumped at the Site.

 Milestone and Federated sought judicial review of the TWC order in separate suits,
which were consolidated to form the agency appeal on December 22, 1988. Meanwhile, believing
that Federated had not fully disclosed the extent of its hazardous waste dumping at the Site,
Milestone filed a separate lawsuit in Travis County against Federated on May 17, 1988 ("Cause
II"), alleging breach of warranty, breach of contract, and DTPA violations. Tex. Bus. & Com.
Code Ann. § 17.46 (West 1987). On March 14, 1990, Milestone filed its first amended petition
in the agency appeal, cross-claiming for contribution and/or indemnity against appellees, and
seeking apportionment of the environmental cleanup costs under the Texas Health and Safety
Code. Tex. Health & Safety Code Ann. §§ 361.276, 361.343, 361.344 (West 1992).

 On August 29, 1990, Cause II was placed on the district court's dismissal docket
and was dismissed for want of prosecution on October 17, 1990. Milestone did not file a motion
to reinstate, as permitted under Texas Rule of Civil Procedure 165a(3). See Tex. R. Civ. P.
165a(3).

 Instead, Milestone filed a third suit, this time in Harris County ("Cause III"), on
January 23, 1991, three months after the dismissal of Cause II. In this suit, Milestone alleged
common law fraud; real estate fraud, Tex. Bus. & Com. Code Ann. § 27.01 (West 1987); breach
of warranty; commercial frustration; and contribution and/or indemnity. Milestone voluntarily
nonsuited Cause III on June 5, 1992, seventeen months after filing.

 Meanwhile, Milestone had returned its attention to the agency appeal. On February
6, 1992, Milestone filed its second amended petition in the agency appeal to include the tort
claims against appellees along with its suit for judicial review of the agency order. On October
6, 1992, appellees responded with a motion for summary judgment on the tort claims, asserting
that they were barred by the applicable statutes of limitations. Milestone raised three arguments
in defense of the summary judgment motion, which now constitute Milestone's points of error on
appeal. First, Milestone contended that the tort claims in its second amended petition filed in
1992 related back to its first amended petition filed in 1990, and thus at least were not barred by
the four-year statute of limitations. Second, Milestone argued that although Cause II was
dismissed for want of prosecution, its filing in 1988 tolled the running of the statutes of limitations
on the tort claims. Third, Milestone urged that disputed fact issues concerning the tolling of the
statutes of limitations made summary judgment inappropriate.

 The trial court rejected Milestone's arguments and rendered partial summary
judgment in favor of the appellees on the tort claims on December 23, 1992. The trial court
concluded that "whatever civil claims and causes of action may have accrued to Milestone against
[the appellees] regarding the sale of [the Site] did so more than four (4) years prior to the filing
of Milestone's Second Amended Petition," and that the tort claims asserted in its second amended
petition in the agency appeal did not relate back to any claims made in its first amended petition. 
The trial court severed the tort claims subject to the partial summary judgment order, making the
judgment final, and Milestone appealed. We will affirm the summary judgment on Milestone's
DTPA and negligent misrepresentation claims, but will reverse the summary judgment on
Milestone's common law fraud and statutory real estate fraud claims.



DISCUSSION


1.  Relation Back of Milestone's Tort Claims to its First Amended Petition

 In its first point of error, Milestone argues that the trial court erred in holding that
its tort claims did not relate back to its first amended petition and were therefore barred by 
statutes of limitations. We agree.

 The primary purpose of statutes of limitations is to insure that claims are asserted
within a reasonable time, giving the opposing party a fair opportunity to defend while evidence
is still available. Matthews Constr. Co. v. Rosen, 796 S.W.2d 692, 694 (Tex. 1990). Statutes
of limitations also insure that notice of claims be given to adverse parties in order to prevent
"fraudulent and stale claims from springing up at great distances of time and surprising the other
party." Hallaway v. Thompson, 226 S.W.2d 816, 820 (Tex. 1950). Thus, limitations establish
a point of repose and terminate stale claims. Murray v. San Jacinto Agency, Inc., 800 S.W.2d
826, 828 (Tex. 1990).

 Section 16.068 of the Civil Practice and Remedies Code limits the application of
statutes of limitations to amended pleadings:



If a filed pleading relates to a cause of action, cross action, counterclaim, or
defense that is not subject to a plea of limitation when the pleading is filed, a
subsequent amendment or supplement to the pleading that changes the facts or
grounds of liability or defense is not subject to a plea of limitation unless the
amendment is based on a new, distinct, or different transaction or occurrence.



Tex. Civ. Prac. & Rem. Code Ann. § 16.068 (West 1986). The purpose of section 16.068 was
that "limitation statutes should be relaxed to avoid undue harshness where this can be done
consistently with the true reason of [the] statutes." Lynch v. American Motorists Ins. Co., 101
F. Supp. 946, 949 (N.D. Tex. 1951). See also Oliveros v. Dillon-Beck Mfg. Co., 260 S.W.2d
707, 710 (Tex. Civ. App.--Galveston 1953, no writ) ("The manifest purpose of [section 16.068]
was to liberalize the right of a plaintiff to amend a petition . . . .").

 Under section 16.068, if the amended pleading does not allege a wholly new,
distinct, or different transaction, then it relates back to the original filing and is not subject to a
limitations defense. Ex parte Goad, 690 S.W.2d 894, 896 (Tex. 1985). Even if the amended
petition contains new causes of action, the new causes are not barred by limitations unless they
arise from a wholly different transaction. Leonard v. Texaco, Inc., 422 S.W.2d 160, 163 (Tex.
1967). Since section 16.068 is a remedial statute, designed to protect litigants from loss of their
claims by a plea of limitation in cases where that would otherwise occur, section 16.068 "should
be liberally construed and applied to effect that purpose." Republic Nat'l Bank of Dallas v.
Rogers, 575 S.W.2d 643, 647 (Tex. Civ. App.--Waco 1978, writ ref'd n.r.e.). See also Bradley
v. Etessam, 703 S.W.2d 237, 242 (Tex. App.--Dallas 1985, writ ref'd n.r.e.). Accordingly, to
determine whether Milestone's tort claims relate back to its first amended petition, we must
liberally read Milestone's first amended petition, asking whether the tort claims are based on
transactions or occurrences new, distinct, or different from those upon which the claims made in
the first amended petition are based. 

 Milestone primarily argues that its tort claims relate back to claims for
"contribution and/or indemnity" in its first amended petition. (3) This section of its first amended
petition reads as follows:



In addition, or in the alternative, pursuant to Section 11(b) of the Act, pursuant to
Section 361.344(a) of the Texas Health and Safety Code, and pursuant to the
common law of Texas, Milestone seeks contribution and/or indemnity from
Federated, Lone Star, ASARCO and/or Missouri Pacific, for any costs Milestone
has incurred in the past or will be required to incur in the future as a result of the
administrative order, or any future governmental action or other civil action by
private parties regarding contamination at the Site, such costs to include, but not
be limited to, costs incurred to investigate the contamination on the Site, costs
incurred to eliminate the release or threatened release, attorney's fees incurred to
defend against any claim, agency action or suit by governmental or private entities,
costs to prepare and provide witnesses, and costs of studies, analyses, engineering
reports, tests, consulting fees, or other projects needed to prepare Milestone's case,
and other costs as the Court, in its discretion, considers reasonable. See Tex.
Health & Safety Code § 361.344(a) (Vernon Pamphlet 1990).



(emphasis added). Milestone argues that the allegation in its first amended petition stating that
"[w]hen selling the Site to Milestone, Federated made assurances that any material was not
unsuitable for fill," demonstrates that the factual basis of its tort claims is the same as the factual
basis of its contribution and indemnity claims. This allegation appears under both the headings
"NATURE OF THE CASE" and "FACTUAL BACKGROUND."

 We hold that, based on the references to Federated's alleged misrepresentations in
its first amended petition, Milestone's tort claims in its second amended petition relate to its claim
for indemnity and thus are not barred by limitations. Indemnity results in a total shifting of
liability to one tortfeasor, as opposed to contribution, which only results in a partial shifting of
liability. See B & B Auto Supply, Sand Pit, & Trucking Co. v. Central Freight Lines, Inc., 603
S.W.2d 814, 816 (Tex. 1980). More importantly, indemnity is not merely a derivative claim as
is contribution: "[T]he right to indemnity usually arises when one tortfeasor has breached a duty
owed to a co-tortfeasor." Id.; Shoemaker v. Fogel, Ltd., 826 S.W.2d 933, 935 (Tex. 1992)
(characterizing contribution as "derivative of the plaintiff's right to recover from the joint
defendant against whom contribution is sought."). Thus, construing Milestone's first amended
petition broadly, it may be read as seeking indemnity from the appellees based on the alleged
misrepresentations made by Federated to Milestone during the sale of the Site. Further, the
references to the misrepresentations made in the petition were sufficient to apprise the appellees
that the sale of the Site was the "transaction or occurrence" upon which Milestone's indemnity
claim was based.

 The appellees contend that Milestone's tort claims cannot relate back to its
contribution or indemnity claims because the latter claims are defective. The appellees cite
authority for the proposition that contribution among joint tortfeasors did not exist at common law
in Texas, and exists only by statute. See Tierra Dev. Co. v. C.W. Settles, 672 S.W.2d 876, 878
(Tex. App.--Corpus Christi 1984, no writ); Lubbock Mfg. Co. v. Perez, 591 S.W.2d 907, 922
(Tex. Civ. App.--Waco 1979, writ dism'd by agr.). Further, the appellees assert that common law
indemnity was virtually abolished in Texas with the adoption of comparative negligence. 
Bonniwell v. Beech Aircraft Corp., 663 S.W.2d 816, 819 (Tex. 1984) ("Only a vestige of common
law indemnity remains."). The appellees point out that except for express contractual indemnity,
common law indemnity remains only in cases involving purely vicarious liability and in products
liability cases involving an innocent retailer. See id.

 While we recognize that Milestone's claim for indemnity may have been subject
to challenge, either by special exception or by a motion for summary judgment, the appellees
made no such challenge. Further, the defective nature of the indemnity claim does not alter the
fact that it "relates to" the same underlying transaction or occurrence as do the tort claims:



The object of a statute of limitations, requiring a complaining party to assert his
claim within a reasonable time, is to suppress fraudulent and stale claims. But the
filing of a petition tolls the statute of limitations as to every cause of action asserted
in the original petition, and this is true no matter how imperfectly the cause of
action is alleged--even if it is so defective as to be subject to a general or special
demurrer, provided it is filed before the expiration of the statutory period of
limitation and is based upon a proper cause of action described with sufficient
certainty to apprise the defendant of its nature.



Gray v. Laketon Wheat Growers, 240 S.W.2d 353, 355 (Tex. Civ. App.--Amarillo 1951, no writ)
(emphasis added). Given the references to Federated's alleged misrepresentations in Milestone's
first amended petition and that the appellees raised no challenge to Milestone's claim for
indemnity, we cannot say that the claim for indemnity is so defective that Milestone's tort claims
do not relate back to it. (4) Milestone's first point of error is sustained.



2.  Statute of Limitations for Negligent Misrepresentation

 Under our holding that Milestone's tort claims in its second amended petition relate
back to its first amended petition, only those tort claims that are subject to a four-year statute of
limitations survive. Both parties concede that Milestone's tort claims accrued in July 1986, when
the TWC notified Milestone that the agency planned to investigate the Site for the presence of
hazardous wastes. Thus, since the first amended petition was filed on March 14, 1990, those tort
claims subject to a two-year statute of limitations are barred while those tort claims subject to a
four-year statute of limitations survive.

 Accordingly, the common law fraud and real estate transaction fraud claims survive
because they are subject to a four-year statute of limitations. Tex. Civ. Prac. & Rem. Code Ann.
§ 16.004 (West 1986); Williams v. Khalaf, 802 S.W.2d 651, 658 (Tex. 1990) ("[A]ll fraud actions
. . . have a four-year limitation period, regardless of the remedy sought."). The DTPA cause of
action is barred because it is subject to a two-year statute of limitations, Tex. Bus. & Com. Code
Ann. § 17.565 (West 1987). (5) However, the appellees and Milestone dispute whether a claim for
negligent misrepresentation is subject to a two-year or a four-year statute of limitations.

 Milestone contends that a negligent misrepresentation claim is subject to a four-year
statute of limitations because it is more like a claim for fraud than a claim for negligence. (6) 
Milestone cites Rosenthal v. Blum, 529 S.W.2d 102, 104 (Tex. Civ. App.--Waco 1975, writ ref'd
n.r.e.), which states that negligent misrepresentation "constitutes a specie of remedial fraud in
Texas." However, neither Rosenthal nor the cases that cite it address the issue of whether a two-year or a four-year statute of limitations is appropriate for the tort. (7) Courts of appeals that have
addressed the limitations issue have uniformly held that a two-year statute of limitations is
appropriate for negligent misrepresentation. Texas Am. Corp. v. Woodbridge Joint Venture, 809
S.W.2d 299, 302-03 (Tex. App.--Fort Worth 1991, writ denied) ("Negligent misrepresentation is
properly identified as being a claim sounding in negligence rather than fraud."); Coleman v.
Rotana, Inc., 778 S.W.2d 867, 873 (Tex. App.--Dallas 1989, writ denied) (citing Cook
Consultants, Inc. v. Larson, 677 S.W.2d 718, 721 (Tex. App.--Dallas 1984), rev'd on other
grounds, 690 S.W.2d 567 (Tex. 1985)); Susser Petroleum Co. v. Latina Oil Corp., 574 S.W.2d
830, 832 (Tex. Civ. App.--Texarkana 1978, no writ).

 The Texarkana Court of Appeals in Susser Petroleum observed that negligent
misrepresentation, as set forth in section 552 of the Second Restatement of Torts, (8) "imposes
liability upon a party that supplies false information in the course of business for the guidance of
others in their business transactions and it is immaterial whether or not such misrepresentation was
made innocently or deliberately or with a fraudulent or dishonest intent. To be actionable, the
representation need only be false either by accident or intent." Susser Petroleum Co., 574
S.W.2d at 832 (citations omitted) (emphasis added). In contrast, common law fraud requires more
than a mere negligent misrepresentation. To recover on a claim for common law fraud, the
plaintiff must show that: (1) a material representation was made; (2) the representation was false;
(3) when the representation was made the speaker knew it was false or made it recklessly without
any knowledge of its truth and as a positive assertion; (4) the speaker made the representation with
the intent that it should be acted upon by the party; (5) the party acted in reliance upon the
representation; and (6) the party thereby suffered injury. Eagle Properties Ltd. v. Scharbauer,
807 S.W.2d 714, 723 (Tex. 1990); Oilwell Div., United States Steel Corp. v. Fryer, 493 S.W.2d
487, 491 (Tex. 1973) (quoting Wilson v. Jones, 45 S.W.2d 572 (Tex. Comm'n App. 1932,
holding approved)).

 Having considered the respective elements of common law fraud and negligent
misrepresentation, we agree that because negligent misrepresentation does not require knowledge,
it "is properly identified as being a claim sounding in negligence rather than fraud" and is thus
subject to a two-year statute of limitations like negligence. Texas Am. Corp., 809 S.W.2d at 303. 
See also W. Page Keeton et al., Prosser and Keeton on Torts 740 (5th ed. 1984) (explaining that
misrepresentation "may be separated into the three familiar tort classifications of intent,
negligence, and strict responsibility"). Accordingly, we hold that Milestone's claim for negligent
misrepresentation is subject to a two-year statute of limitations and is therefore barred.



3.  Other Points of Error

 In its second point of error, Milestone argues that the trial court erred in ruling as
a matter of law that Cause II had been voluntarily dismissed, so that it did not toll the running of
the statutes of limitations on the tort claims. The filing of suit and diligent issuance and service
of citation toll the running of the statute of limitations. Gant v. DeLeon, 786 S.W.2d 259, 260
(Tex. 1990) (per curiam); Rigo Mfg. v. Thomas, 458 S.W.2d 180 (Tex. 1970). However, this
Court has held that "[a]lthough the filing of suit and service of citation interrupt the running of
the statute, its dismissal for want of prosecution will have the same effect as if the suit had never
been filed." Shaw v. Corcoran, 570 S.W.2d 96, 98 (Tex. App.--Austin 1978, no writ) (citing
Shield v. Boone, 22 Tex. 193 (1858); Chambers v. Shaw, 23 Tex. 165 (1859)). Because Cause
II was dismissed for want of prosecution, it did not toll the statute of limitations on Milestone's
tort claims. Milestone's second point of error is overruled.

 In its third point of error, Milestone contends that the trial court erred in holding
that there were no genuine issues of material fact pertaining to the running of the statutes of
limitations that precluded summary judgment. Milestone asserts in its brief that the record
contains "fact issues regarding the accrual of Milestone's causes of action on any date before
1986." We have already determined that Milestone's claims subject to the four-year statute of
limitations are not time-barred. With regard to the claims governed by a two-year statute of
limitations, the existence of fact issues regarding their accrual before July 1986 is irrelevant. 
Milestone's claims subject to the two-year statute would be barred by the time Milestone's first
amended petition was filed, on March 14, 1990, even if they had accrued as late as February 1,
1988, the date the TWC cleanup order was issued. Thus, since there are no material fact disputes
affecting the statutes of limitations, Milestone's third point of error is overruled.



CONCLUSION


 Having found that Milestone's DTPA and negligent misrepresentation claims are
barred by the statute of limitations, we affirm that part of the summary judgment applicable to
those claims, but reverse that part of the judgment applicable to Milestone's common law fraud
and statutory real estate fraud claims, and remand that portion of the cause for trial on the merits.



 Mack Kidd, Justice

Before Justices Powers, Jones and Kidd

Affirmed in Part; Reversed and Remanded in Part

Filed: December 8, 1993

Publish

1.   Milestone brought claims of fraud, negligent misrepresentation, and violations of
the Texas Deceptive Trade Practices--Consumer Protection Act ("DTPA"), Tex. Bus. &
Com. Code Ann. § 17.46 (West 1987) (collectively "tort claims").
2.   An owner of a property listed on the State of Texas Registry as a site containing
hazardous waste must file an affidavit or notice in county property records stating that the
property is listed on the registry. Tex. Health & Safety Code Ann. § 361.188(d) (West 1992).
3.   Milestone also argues that its tort claims relate back to its claims for statutory
apportionment of cleanup costs. This argument fails. The tort claims do not relate back
to the statutory apportionment claims under section 16.068 because the former are based
on a "new, distinct, or different transaction or occurrence." Milestone's tort claims are
based on alleged misrepresentations made by Federated during its sale of the Site to
Milestone. In contrast, the apportionment claims arise from the TWC order. Further,
the apportionment claims do not seek affirmative relief from appellees; they instead seek
relief only from the TWC, namely, that the agency apportion more of the cleanup costs to
appellees.
4.   The appellees have also argued that because Milestone originally asserted its tort
claims in separate lawsuits, Milestone is barred from relating the tort claims back to its
suit for judicial review. However, even though Milestone may have initially pursued the
tort claims through separate lawsuits which were later abandoned, this does not mean
that as a matter of law that Milestone is foreclosed from seeking to relate back those same
tort claims pursuant to section 16.068.
5.   In oral argument, Milestone referred to its "claim for rescission." Having reviewed
the pleadings, we find that Milestone only prayed for rescission of the contract to
purchase the Site as a remedy for their DTPA cause of action. Further, while Milestone
brought a breach of contract claim in Cause II, and a breach of warranty claim in Cause III,
Milestone did not amend its petition in the agency appeal to include either of these claims.
6.   To recover for negligent misrepresentation, the plaintiff must prove that: (1) the
defendant made the representation in the course of business or in a transaction in which it
has a pecuniary interest; (2) the defendant supplied false information for the guidance of
others in their business; (3) the defendant did not exercise reasonable care or competence
in obtaining or communicating the information; and (4) the plaintiff suffered pecuniary
loss by justifiably relying on the representation. First Interstate Bank v. S.B.F.I., Inc., 830
S.W.2d 239, 245 (Tex. App.--Dallas 1992, no writ); Cook Consultants, Inc. v. Larson, 700
S.W.2d 231, 234 (Tex. App.--Dallas 1985, writ ref'd n.r.e.) (quoting Restatement (Second) of
Torts § 552(1) (1977)).
7.   See Southwestern Clinic of Bone & Joint Diseases v. Farmers Insurance Group, 850
S.W.2d 750 (Tex.App.--Corpus Christi 1993, no writ h.); Metromedia Long Distance, Inc. v.
Hughes, 810 S.W.2d 494 (Tex. App.--San Antonio 1991, writ denied); Great Am. Mortgage
Investors v. Louisville Title Ins., 597 S.W.2d 425 (Tex. Civ. App.--Fort Worth 1980, writ
ref'd n.r.e.); Caldwell v. Overton, 554 S.W.2d 832 (Tex. Civ. App.--Texarkana 1977, no
writ).
8.   The Restatement defines negligent misrepresentation as follows:


One who, in the course of his business, profession or employment, . . .
supplies false information for the guidance of others in their business
transactions, is subject to liability for pecuniary loss caused to them by their
justifiable reliance upon the information, if he fails to exercise reasonable
care or competence in obtaining or communicating the information.


Restatement (Second) of Torts § 552 (1977).