**DAYBREAK EXPRESS,<br>INC., Appellant,**

v.

**LEXINGTON INSURANCE CO., as Subrogee of Burr Computer Environments, Inc. and J. Supor & Sons Trucking & Rigging Co., Appellee.**

No. 14–09–01032–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

May 26, 2011.

Rehearing En Banc Overruled
July 7, 2011.

Scott Benjamin Novak, Eric R. Benton, Daniel Lee Fulkerson, Houston, for appellant.

Loren R. Smith, Houston, for appellee.

Panel consists of Justices SEYMORE, BOYCE, and CHRISTOPHER.

## SUBSTITUTE MAJORITY OPINION

WILLIAM J. BOYCE, Justice.

The majority and dissenting opinions issued on January 11, 2011 are withdrawn, and the panel issues the following substitute majority and dissenting opinions.

In this subrogation action, Lexington Insurance Co. sued Daybreak Express, Inc. in connection with property damage that occurred during the interstate shipment of

electronic equipment owned by Burr Computer Environments, Inc.

The trial court found that (1) Lexington proved all elements of a Carmack Amendment claim under 49 U.S.C. § 14706 (2006); (2) the claim was not time-barred under the applicable New Jersey statute of limitations; and (3) Lexington sustained damages of $85,800. The trial court signed a final judgment awarding damages and attorney's fees, and Daybreak appealed. We reverse and render a take-nothing judgment in favor of Daybreak because Lexington's Carmack Amendment claim is barred by limitations under Texas law.

## BACKGROUND

Burr hired J. Supor & Sons Trucking & Rigging Co. to transport Burr's equipment from New Jersey to Texas. Supor issued a bill of lading for the shipment, which it referred to Daybreak, a New Jersey trucking company. Supor's personnel loaded the equipment onto Daybreak's truck, and Daybreak transported the equipment to Daybreak's New Jersey terminal. Daybreak transferred the bill of lading to its sister company, which then transferred it to T. Orr Trucking, Inc. Orr transported the equipment to Texas. The equipment arrived in Texas on August 15, 2002 in a damaged condition.

Burr presented a written claim for damages to Daybreak on September 11, 2002. Daybreak hired an independent adjuster from Cunningham Lindsey to investigate Burr's claim. The adjuster submitted a report to Daybreak reflecting that the adjuster and Burr had agreed to value Burr's claim at $166,655. Burr contended that this valuation was a settlement agreement. Daybreak contacted Burr on February 6, 2003 and informed Burr that Daybreak would pay only $5,420 for the claim.

Burr also filed a damage claim with Supor. Supor paid Burr $5,000 on November 13, 2003 to meet its insurance policy deductible. Supor's insurer, Lexington, paid Burr $87,500 to settle the claim on November 18, 2003.

Lexington filed a subrogation suit against Daybreak in Texas state court on January 6, 2005. In its original petition, Lexington asserted only a single state law breach of contract claim based on the alleged settlement agreement between Burr and Daybreak. The original petition recited that Daybreak delivered a shipment to Burr in Texas on August 15, 2002; that a bill of lading had been issued by Supor and consigned to Daybreak; and that "[u]pon arrival in Houston, it was discovered the equipment had been damaged in transit." Lexington alleged that "it issued a policy of cargo insurance to J. Supor and Sons Trucking and Rigging Co., which provided coverage to Burr for its cargo the subject of this lawsuit." Lexington further alleged, "When Daybreak breached its settlement agreement with Burr, Burr submitted the claim to Plaintiff, and Plaintiff subsequently reimbursed the loss suffered by Burr under its policy of insurance." Lexington asserted that it "became subrogated to the rights of Burr in both contract and equity." Lexington additionally asserted that "it is subrogated to the causes of action of Burr both in contract and tort, and may prosecute the claim of Burr against Daybreak."

Daybreak removed the case to federal court, arguing that Lexington's claim "is a civil action pending in the State Court against a common carrier to recover damages for alleged delay, loss, or injury to a shipment arising under the Interstate Commerce Act." *See* 49 U.S.C. § 14706. Lexington filed a motion to remand and contended that federal question jurisdiction under 28 U.S.C. §§ 1331 and 1441(b) did not encompass the single state law breach of contract action pleaded in its

original petition. *See* 28 U.S.C. §§ 1331, 1441(b) (2006). In response, Daybreak conceded that "a federal claim does not appear on the face of the original petition, but argue[d] that federal jurisdiction is nevertheless proper under the complete preemption doctrine." *See Lexington Ins. Co. v. Daybreak Express, Inc.,* 391 F.Supp.2d 538, 540 (S.D.Tex.2005).

United States District Judge Sim Lake concluded that "Lexington does not seek to impose liability on Daybreak for damages arising from the interstate transport of property." *Id.* at 541. "Instead, Lexington seeks to enforce an agreement it alleges Daybreak entered into in order to settle claims for damages to a shipment of electrical equipment." *Id.* "Resolution of this contract claim does not turn on the rights and responsibilities of Daybreak as a carrier in interstate commerce." *Id.* The federal district court also observed as follows: "Lexington seeks to recover in contract not for loss or damage to the electrical equipment, but rather for breach of Daybreak's alleged promise to settle those claims for the specified sum." *Id.* at 541 n. 8. Accordingly, the federal district court remanded this case on June 24, 2005.

More than two years after Daybreak rejected the valuation of Burr's claim, Lexington added claims for breach of contract, indemnity, contribution, and unjust enrichment arising from the payment it made to Burr on Supor's behalf. Lexington pleaded for the first time on May 4, 2007 that Daybreak is liable for damages under the Carmack Amendment.

Following a bench trial, the trial court concluded that the "New Jersey statute of limitations is applicable and therefore [Lexington's] claim is not time barred." The trial court found that the equipment was "delivered to the initial carrier in good condition" and was "damaged before delivery" to its final destination, which entitles Lexington to damages under its Carmack Amendment claim.[1] *See Mo. Pac. R.R. Co. v. Elmore & Stahl,* 377 U.S. 134, 137–38, 84 S.Ct. 1142, 12 L.Ed.2d 194 (1964), *aff'g Mo. Pac. R.R. Co. v. Elmore & Stahl,* 368 S.W.2d 99 (Tex.1963). The trial court awarded Lexington $85,800 in damages, representing the amount paid to Burr less the damaged equipment's salvage value, plus attorney's fees.

## ANALYSIS

### I. Applicable Limitations Period

Daybreak contends on appeal that Lexington's claim is barred by limitations. As subrogee, Lexington stepped into Burr's shoes and is subject to any limitations defense that would apply to Burr. *See, e.g., Guillot v. Hix,* 838 S.W.2d 230, 232–33 (Tex.1992) ("Because a subrogation action is derivative, the defendant in such an action may ordinarily assert any defense he would have had in a suit by the subrogor.... Limitations is among the defenses which may be asserted."). Determining the applicable limitations period requires an examination of the federal statutory scheme governing interstate shipments by common carriers.

■ A carrier's liability for damage to an interstate shipment is a matter of federal law. *Mo. Pac. R.R. Co.,* 377 U.S. at

---

1. These findings were recited in the final judgment. We consider findings of fact recited in the judgment unless they are supplanted by separately filed findings. *See In re C.A.B.,* 289 S.W.3d 874, 880–81 (Tex.App.-Houston [14th Dist.] 2009, no pet.). The trial court made no findings on any element of any

claims other than the Carmack Amendment claim, and we do not consider the other claims here. *See* Tex.R. Civ. P. 299 ("The judgment may not be supported upon appeal by a presumed finding upon any ground of recovery ... no element of which has been included in the findings of fact....").

137, 84 S.Ct. 1142. The applicable statutory scheme is set forth in the Carmack Amendment:

> A carrier providing transportation or service ... shall issue a receipt or bill of lading for property it receives for transportation under this part. That carrier and any other carrier that delivers the property and is providing transportation or service ... are liable to the person entitled to recover under the receipt or bill of lading. The liability imposed under this paragraph is for the actual loss or injury to the property caused by (A) the receiving carrier, (B) the delivering carrier, or (C) another carrier over whose line or route the property is transported....

49 U.S.C. § 14706(a). A state court has subject matter jurisdiction to adjudicate a claim under the Carmack Amendment. *See id.* § 14706(d)(3).

Parties frequently establish the time period for filing suit under the Carmack Amendment by agreement. *See generally Shao v. Link Cargo (Taiwan) Ltd.,* 986 F.2d 700, 707–08 (4th Cir.1993) ("The Carmack Amendment ... contemplates that limitations periods are terms to be bargained over between shipper and carrier....."). Because the parties did not do so here, we must identify the source of the applicable limitations period.

Daybreak asserts that the Carmack Amendment itself establishes a two-year statute of limitations. *See* 49 U.S.C. § 14706(e). Alternatively, Daybreak argues that a "catch-all" four-year limitation period applies. *See* 28 U.S.C. § 1658(a) (2006). Daybreak contends that Lexington's suit is untimely under either statute

of limitations because the Carmack Amendment claim Lexington first pleaded on May 4, 2007 (1) was not brought within two or four years of Daybreak's disallowance of the written claim for damages on February 6, 2003; and (2) does not relate back to Lexington's claim for breach of settlement agreement filed on January 6, 2005.

■ We reject Daybreak's contention that federal law provides the applicable limitations period in the absence of an agreed limitations period. Daybreak relies on subsection (e), which states that "[a] carrier may not provide by rule, contract, or otherwise ... a period of less than 2 years for bringing a civil action against it under this section." 49 U.S.C. § 14706(e). But this section does not establish a limitations period; instead, it provides only that carriers cannot establish by contract a limitations period of less than two years. *See La. & W.R. Co. v. Gardiner,* 273 U.S. 280, 284, 47 S.Ct. 386, 71 L.Ed. 644 (1927).[2]

■ The four-year "catch-all" limitations period imposed by 28 U.S.C. § 1658 does not apply because (1) the four-year limitations period applies to claims made possible by post–1990 legislative enactments; and (2) Carmack Amendment claims against motor carriers have been authorized since 1935. *See Jones v. R.R. Donnelley & Sons Co.,* 541 U.S. 369, 382, 124 S.Ct. 1836, 158 L.Ed.2d 645 (2004) ("We conclude that a cause of action 'aris[es] under an Act of Congress enacted' after December 1, 1990—and therefore is governed by § 1658's 4–year statute of limitations—if the plaintiff's claim against

---

**2.** Daybreak claims that its tariff establishes a limitation period because "it reiterated the Carmack Amendment's two-year statute of limitations by reference...." We need not address whether the tariff applies or incorporates a statute of limitations under the Carmack Amendment because we conclude that the Carmack Amendment establishes no statute of limitations.

the defendant was made possible by a post–1990 enactment.") (quoting 28 U.S.C. § 1658(a)); *see also* Motor Carrier Act of 1935, Pub.L. No. 74–255, § 219, 49 Stat. 543, 563 ("The provisions of section 20(11) [the Carmack Amendment] of part I [the Interstate Commerce Act] shall apply with like force and effect to receipts or bills of lading of common carriers by motor vehicle.").

■■■ When the governing federal statute does not provide a limitations period, we "borrow" the most closely analogous state limitations period. *See Graham Cnty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*, 545 U.S. 409, 414, 125 S.Ct. 2444, 162 L.Ed.2d 390 (2005). There are two candidates for the title in this case.

The first candidate is the New Jersey statute of limitations, which provides that an "action at law for … any tortious injury to … personal property … or for recovery upon … liability, express or implied" must be brought not later than six years after the day the cause of action accrues. N.J. Stat. Ann. § 2A:14–1 (West 2000). The second candidate is the Texas statute of limitations, which provides that "a person must bring suit for … injury to … the property of another … not later than two years after the day the cause of action accrues." Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a) (Vernon 2002). This circumstance adds a conflict of law component to the process of determining the applicable statute of limitations.

The case was tried to the bench on October 18, 2007. After both sides rested and while closing argument was being presented, the trial court questioned Lexington's counsel about whether the statute of limitations is substantive or procedural for conflict of law purposes. The trial court stated, "In conflicts law you have to decide whose law you're applying and then you have to analyze procedure versus substance." In response to the trial court's questioning, Lexington's counsel argued that the statute of limitations is substantive law for conflict of law purposes in this case and that New Jersey law should apply.

Lexington reiterated this argument in Plaintiff's Post–Trial Brief filed on October 29, 2007. Lexington further argued that "any amended claims asserted in this lawsuit relate[ ] … back to the original date of filing of suit of January 5, 2005. …" Daybreak also filed post-trial briefing on October 29, 2007, in which it contended that (1) Lexington's claim is barred under a two-year or a four-year limitations period; (2) "[t]he claims based in federal law arise from wholly separate facts and circumstances than the state law breach of contract claim;" and (3) "Judge Sim Lake made a clear distinction between the federal claims for property damage and the state law claims for breach of contract." Lexington filed a reply on November 1, 2007; among other things, Lexington argued that its Carmack Amendment claim would relate back to its original petition filed in 2005 "[i]f a Texas statute of limitations applies. …" Lexington also argued that "Judge Lake merely held that Plaintiff was only asserting a breach of contract *claim* at the time, not that the contract claim was 'wholly based on a new, distinct, or different transaction or occurrence'" (original emphasis).

■■ As it did in the trial court, Lexington argues on appeal that the New Jersey statute of limitations is substantive law that should apply under the "most significant relationship" test used in Texas, the forum state, to decide conflict of law questions. *See Hughes Wood Prods., Inc. v. Wagner*, 18 S.W.3d 202, 205 (Tex.2000). Under this test, Texas courts consider multiple factors to determine which state's law has the most significant relationship to

the particular substantive issue to be resolved. *Id.* Before applying the "most significant relationship" test, however, we first must address whether the statute of limitations is procedural or substantive for these purposes.

Determining which state's statute of limitations governs is a question of law for the court to decide *de novo. See, e.g., Hughes Wood,* 18 S.W.3d at 204; *Greenberg Traurig of N.Y., P.C. v. Moody,* 161 S.W.3d 56, 70 (Tex.App.-Houston [14th Dist.] 2004, no pet.). Under Texas conflict of law principles, courts apply non-substantive, procedural rules of the forum state. *See Arkoma Basin Exploration Co. v. FMF Assocs. 1990–A, Ltd.,* 249 S.W.3d 380, 387 (Tex.2008) (Texas law governed procedural matter of error preservation despite application of Virginia law to other issues); *PennWell Corp. v. Ken Assocs., Inc.,* 123 S.W.3d 756, 763 (Tex.App.-Houston [14th Dist.] 2003, pet. denied) (declining to apply Japanese law on procedural issue because procedural matters are governed by the forum state's law). A conflict of substantive law must exist to invoke the "most significant relationship" test. *PennWell Corp.,* 123 S.W.3d at 763 (citing *Duncan v. Cessna Aircraft Co.,* 665 S.W.2d 414, 419 (Tex.1984), and *Young Ref. Corp. v. Pennzoil Co.,* 46 S.W.3d 380, 385 (Tex. App.-Houston [1st Dist.] 2001, pet. denied)). "Generally, what is a matter of substance and what is a matter of procedure is determined by the law of the forum state according to its own laws." *Id.* at 764.

Texas law generally treats statutes of limitations as procedural in nature. *See California v. Copus,* 158 Tex. 196, 309 S.W.2d 227, 230–31 (1958) (with some exceptions, statutes of limitations are generally procedural for conflict of law purposes); *see also Johansen v. E.I. Du Pont De Nemours & Co.,* 810 F.2d 1377, 1380–81 (5th Cir.1987) (subject to *Copus* exceptions, Texas considers statutes of limitations to be procedural for conflict of law purposes); *cf. Robinson v. Crown Cork & Seal Co., Inc.,* 335 S.W.3d 126, 141–42 (Tex.2010) (with some exceptions, statutes of limitations are generally considered to be procedural for purposes of retroactivity analysis) (citing *Baker Hughes, Inc. v. Keco R. & D., Inc.,* 12 S.W.3d 1, 4 (Tex. 1999)). If a statute creates a private right of action and incorporates a time limit within which a claimant must initiate an action, then the limitations period may become a substantive element of the statutory cause of action itself. *See Copus,* 309 S.W.2d at 230–31; *see also Shields v. State,* 27 S.W.3d 267, 274–75 (Tex.App.-Austin 2000, no pet.). This exception does not apply here because the statute of limitations at issue does not create a private right of action; instead, it restricts the period within which an existing right may be acted upon.

Accordingly, the Texas two-year limitations period applies here because it is a procedural rule of the forum state. *See* Tex. Civ. Prac. & Rem.Code Ann. § 16.003; *see also Arkoma Basin,* 249 S.W.3d at 387; *PennWell Corp.,* 123 S.W.3d at 763–64.[3]

---

**3.** Relying on *Computer Assoc. Int'l, Inc. v. Altai, Inc.,* 918 S.W.2d 453, 461 n. 3 (Tex. 1996), Lexington argued in the trial court that "New Jersey's statute of limitations is substantive, not procedural" for conflict of law purposes. Lexington's reliance on *Computer Associates* is misplaced. The cited footnote appears in an appendix to the supreme court's opinion. The appendix contains an opinion from the United States Court of Appeals for the Second Circuit in which that court certified two questions of Texas law to the Texas Supreme Court. In doing so, the Second Circuit recounted the case's procedural history beginning with the filing of the underlying suit in the United States District

## II. Accrual

■ The analysis thus far has focused on the length of the statute of limitations. The next step is to address accrual.

■ When it becomes necessary to borrow a state limitations period for a federal cause of action, only that portion necessary to fill the gap left by Congress is to be borrowed. *M.I.S. Eng'g v. U.S. Express Enter.*, 438 F.Supp.2d 1056, 1065 (D.Neb.2006) (citing *West v. Conrail*, 481 U.S. 35, 39–40 & n. 6, 107 S.Ct. 1538, 95 L.Ed.2d 32 (1987)). Although the Carmack Amendment does not provide an applicable limitations period, it does establish when Lexington's claim accrued. The Carmack Amendment states: "The period for bringing a civil action is computed from the date the carrier gives a person written notice that the carrier has disallowed any part of the claim specified in the notice." *See* 49 U.S.C. § 14706(e)(1); *see also M.I.S. Eng'g*, 438 F.Supp.2d at 1065. Daybreak disallowed the claim by written notice on February 6, 2003. Therefore, the Carmack Amendment claim accrued on that date.

Lexington filed its original petition on January 6, 2005, within two years of the date on which Daybreak disallowed the damages claim. But Lexington sued only for breach of the alleged settlement agreement in its original petition; the Carmack Amendment claim was not asserted until 2007. To determine whether Lexington's Carmack Amendment claim was timely, we must decide next whether it "relates back" to the claim for breach of an alleged settlement agreement filed before expiration of the limitations period.

## III. Relation Back

■ We look to state law to determine how to apply a state limitations period to an action accruing under federal law unless the applicable limitations rule would be inconsistent with federal law. *See Bd. of Regents of the Univ. of State of N.Y. v. Tomanio*, 446 U.S. 478, 483, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980) (federal section 1983 claim governed by "borrowed" state statute of limitations as well as state rules tolling limitations period); *see also Johnson v. Ry. Exp. Agency, Inc.*, 421 U.S. 454, 463–64, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975) ("Any period of limitation ... is understood fully only in the context of the various circumstances that suspend it from running against a particular cause of action.... In borrowing a state period of limitations for application to a federal cause of action, a federal court is relying on the State's wisdom in setting a limit, and exceptions thereto, on the prosecution of a closely analogous claim.").

Because federal courts would apply Texas relation-back rules in deciding a Car-

Court for the District of New Jersey. *Id.* The Second Circuit noted that "New Jersey's choice of law rules determine which state's statute of limitations applies" because the case originally had been filed in New Jersey. *Id.* The Second Circuit then stated, "New Jersey has abandoned the prevalent rule that the statute of limitations is a procedural matter and therefore the forum state's statute of limitations is applicable, regardless of which state's substantive law applies." *Id.* (citing *Heavner v. Uniroyal, Inc.*, 63 N.J. 130, 305 A.2d 412, 415–18 (1973), and *Warner v. Auberge Gray Rocks Inn, Ltee.*, 827 F.2d 938, 940–41 (3d Cir.1987)). If Lexington's suit against Daybreak had been filed in a New Jersey court, then New Jersey's conflict of law principles would govern and require application of an interest-based test to determine which state's statute of limitations would control. *See Heavner*, 305 A.2d at 415–18. But because Lexington's chosen forum was Texas rather than New Jersey, Texas conflict of law principles govern this case and the statute of limitations is treated as a controlling procedural rule under governing Texas law. *PennWell Corp.*, 123 S.W.3d at 764.

mack Amendment claim, there is no conflict between Texas and federal law on the relation-back issue. *See, e.g., Moore v. State of Ind.,* 999 F.2d 1125, 1130 (7th Cir.1993) ("In a federal-question case borrowing a state statute of limitations, federal law provides the requirements for the relation back of an amendment, while state law determines the more basic question of whether the substance of the amendment mandates that it relate back in order to avoid the applicable statute of limitations."); *see also Saxton v. ACF Indus., Inc.,* 254 F.3d 959, 963 (11th Cir.2001) ("[W]e join the other circuits in holding that ... federal courts ... apply relation-back rules of state law where, as here, state law provides the statute of limitations for the action.") (citing *Arendt v. Vetta Sports, Inc.,* 99 F.3d 231, 236 (7th Cir.1996), *Lundy v. Adamar of N.J., Inc.,* 34 F.3d 1173, 1184 (3d Cir.1994), and *McGregor v. La. State Univ. Bd. of Supervisors,* 3 F.3d 850, 863 n. 22 (5th Cir. 1993)).

Under Texas law, the test for determining whether a claim asserted in an amended pleading filed after limitations has run relates back to an earlier, timely filed claim focuses on "whether the cause of action alleged in the amended petition is wholly based upon and grows out of a new, distinct, or different transaction or occurrence." *Meisler v. Republic of Tex. Sav. Ass'n,* 758 S.W.2d 878, 881 (Tex.App.-Houston [14th Dist.] 1988, no writ) (citing *Leonard v. Texaco,* 422 S.W.2d 160, 163 (Tex.1967)); *see also* Tex. Civ. Prac. & Rem.Code Ann. § 16.068 (Vernon 2008). The fact that different causes of action are asserted in the original and amended petitions is not dispositive. *Meisler,* 758 S.W.2d at 882. Similarly, proximity in time between separate occurrences also is not determinative. *See Harris v. Galveston Cnty.,* 799 S.W.2d 766, 769 (Tex.App.-Houston [14th Dist.] 1990, writ denied) (post-operation negligence did not relate back to claims of negligence that allegedly occurred during surgery, even though post-operation care was necessitated by and occurred soon after surgery).

Here, the Carmack Amendment claim rests on a transaction that centered on the transport of electrical equipment by a common carrier from New Jersey to Texas; this transaction focuses on details of the transport by Supor, Daybreak, Daybreak's sister company, and Orr across state lines that resulted in $85,800 in damages. In contrast, the breach of contract claim rests on a wholly separate transaction that centered on an alleged settlement agreement; this separate transaction focuses on negotiations between Burr and Cunningham Lindsey as Daybreak's purported agent leading to the alleged $166,655 settlement. On this record, Lexington's 2007 Carmack Amendment claim is "wholly based on a new, distinct or different transaction" that is independent of the settlement agreement upon which Lexington predicated its 2005 breach of contract claim. Therefore, Lexington's Carmack Amendment claim does not relate back to the breach of contract claim asserted in its original petition. *See Meisler,* 758 S.W.2d at 882 ("The cause of action alleged in Appellant's original petition is based on and grows out of an entirely distinct and different transaction than that alleged in his amended petition. The original cause of action was based upon a contract which committed Appellee to make a loan to FWC upon certain specified terms. The cause of action alleged in the fourth amended petition is based upon a deed of trust executed to secure payment of a loan made to FWC by Appellee."); *see also Walker v. Presidium Inc.,* 296 S.W.3d 687, 694–95 (Tex.App.-El Paso 2009, no pet.) (breach of contract and extra-contrac-

tual claims pertaining to rental car company's failure to pay uninsured motorist benefits did not relate back to originally-pleaded negligence claim arising out of underlying car accident).

The conclusion that the Carmack Amendment claim and the claim for breach of a purported settlement agreement involve wholly distinct transactions comports with Lexington's characterization of its claims in its court filings. Lexington successfully argued in federal court that the Burr–Daybreak settlement transaction was wholly distinct from the underlying transaction to transport equipment—and, therefore, beyond the reach of complete preemption under the Carmack Amendment: "The *sole* cause of action asserted by Lexington is for breach of the settlement agreement.... Lexington has not pled the underlying cause of action for which the settlement was reached; in fact if the underlying cause of action is for negligence, it would be time-barred by the Texas two-year statute of limitations . . . ." (original emphasis). The federal district court agreed with Lexington. "Because this is not a suit to recover for loss or damage to property against a carrier, but rather one to enforce a settlement agreement, the case will be remanded to state court." *Lexington Ins. Co.*, 391 F.Supp.2d at 541. In so holding, the federal district court observed that "Lexington seeks to recover in contract not for loss or damage to the electrical equipment but rather for breach of Daybreak's alleged promise to settle those claims for a specified sum." *Id.* at 541 n. 8. This conclusion also dovetails with case law holding that a claim for damages under the Carmack Amendment sounds in negligence. *See M.I.S. Eng'g*, 438 F.Supp.2d at 1062.

The determination that interstate transportation of goods by a common carrier is a transaction distinct from a purported settlement agreement does not depend on an estoppel theory or on Lexington having asserted inconsistent positions. Instead, this determination flows from the conclusion that Lexington's claim for breach of the purported settlement agreement was not subject to complete preemption under the Carmack Amendment—and, therefore, was not removable to federal court based on federal question jurisdiction under 28 U.S.C. § 1441(b). *See Lexington Ins. Co.*, 391 F.Supp.2d at 540–41.

In reaching this holding, the federal district court cited Fifth Circuit case law discussing removability and the scope of complete preemption under the Carmack Amendment. *Id.* at 540 (citing *Hoskins v. Bekins Van Lines*, 343 F.3d 769 (5th Cir. 2003)). *Hoskins* upheld removal of state law claims for negligence, breach of contract, and violations of the Texas Deceptive Trade Practices Act arising from damage to Hoskins's personal belongings that occurred while Bekins was storing the belongings and then moving them from Texas to Virginia. *Hoskins*, 343 F.3d at 771, 778.

Although a preemption defense provides no basis for removal under 28 U.S.C. § 1441(b), "the Supreme Court has construed certain federal statutes as 'not only preempting state law but also authorizing removal of actions that sought relief only under state law.' " *Id.* at 773 (quoting *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6–7, 123 S.Ct. 2058, 156 L.Ed.2d 1 (2003)). "In these contexts, the federal statute 'so forcibly and completely displace[s] state law that the plaintiff's cause of action is either wholly federal or nothing at all.' " *Id.* (quoting *Carpenter v. Wichita Falls Ind. Sch. Dist.*, 44 F.3d 362, 366 (5th Cir. 1995)). The Fifth Circuit concluded that Hoskins's claims could be removed under 28 U.S.C. § 1441(b) because "Congress intended for the Carmack Amendment to

provide *the exclusive cause of action for loss or damages to goods arising from the interstate transportation of those goods by a common carrier.*" *Id.* at 778 (original emphasis). "Accordingly, we hold that the complete pre-emption doctrine applies." *Id.* "Because the Carmack Amendment provides the exclusive cause of action for such claims, we find that Hoskins' claims 'only arise[ ] under federal law and could, therefore be removed under § 1441.'" *Id.* (quoting *Beneficial,* 539 U.S. at 11, 123 S.Ct. 2058).

Given this backdrop, Lexington cannot convincingly argue on appeal that "Lexington's originally filed claim for breaching an alleged agreement to pay for cargo damage was not *'wholly* based on a new, distinct, or different transaction or occurrence' from the cargo claim itself" (original emphasis). The expansive reach of complete preemption under the Carmack Amendment means that *any* cause of action arising from the interstate transportation of goods by a common carrier " 'is either wholly federal or nothing at all' " regardless of how it is labeled. *Hoskins,* 343 F.3d at 773 (quoting *Carpenter,* 44 F.3d at 366). Therefore, Lexington's claim for breach of a settlement agreement would have been subject to complete preemption under the Carmack Amendment if (as Lexington now contends in this appeal) that claim arose from the interstate transportation of goods by a common carrier. *See id.* at 778; *Lexington Ins. Co.,* 391 F.Supp.2d at 540–41. Lexington's claim for breach of the purported settlement agreement cannot be both un-preempted and less than wholly distinct from the interstate transportation of goods by a common carrier.

Because Lexington's 2007 Carmack Amendment claim arises from a distinct transaction and does not relate back to the 2005 claim for breach of an alleged settle-

ment agreement, the Carmack Amendment claim is barred by the applicable two-year limitations period. *See* Tex. Civ. Prac. & Rem.Code Ann. § 16.003; *see also Carpenter,* 44 F.3d at 366 ("A plaintiff with a choice between federal- and state-law claims may elect to proceed in state court on the exclusive basis of state law, thus defeating the defendant's opportunity to remove, but taking the risk that his federal claims will one day be precluded.").

### CONCLUSION

Because the only claim supported by the trial court's findings is barred by limitations, we must reverse the judgment of the trial court and render a take-nothing judgment in favor of Daybreak.

CHRISTOPHER, J., dissenting.

TRACY CHRISTOPHER, Justice, substitute dissenting opinion.

I would hold that the Carmack–Amendment claim is not barred by the Texas two-year statute of limitations, because under section 16.068 of the Civil Practices and Remedies Code, the amended pleading of May 4, 2007 relates back to the original timely-filed pleading of January 6, 2005. *See* Tex. Civ. Prac. & Rem.Code § 16.068 (West 2008). I therefore respectfully dissent.

Section 16.068 of the Civil Practices and Remedies Code is designed to protect litigants from loss of their claims by a plea of limitations, and as a remedial statute, it should be liberally construed. *Milestone Props., Inc. v. Federated Metals Corp.,* 867 S.W.2d 113, 116 (Tex.App.-Austin 1993, no writ); *Republic Nat'l Bank of Dallas v. Rogers,* 575 S.W.2d 643, 647 (Tex.App.-Waco 1978, writ ref'd n.r.e.). This statute provides as follows:

> If a filed pleading relates to a cause of action . . . that is not subject to a plea of

limitation when the pleading is filed, a subsequent amendment or supplement to the pleading that *changes the facts or grounds of liability* or defense is not subject to a plea of limitation unless the amendment or supplement is *wholly* based on a new, distinct, or different transaction or occurrence.

(emphasis added).

The majority concludes that the breach-of-settlement claim originally pled rests on a "wholly different transaction" from the Carmack–Amendment claim. The original pleading described the fact of the original shipment; that the shipment was damaged in transit; and that Burr sustained property damages in the form of the lost value of the equipment. Lexington also pled that it was subrogated to the rights of Burr in both contract and equity and that it was subrogated to Burr's causes of action in both contract and tort. While it is true that the only cause of action pled in the original petition was for breach of the settlement contract, section 16.068 specifically allows for changes in facts and grounds of liability. If, as Daybreak contended, there was no settlement agreement, then Lexington/Burr retained its original tort claim.

The majority, without saying so explicitly, seems to be applying an estoppel argument against Lexington because of Lexington's response to removal of its case to federal court. But, Daybreak has taken the same inconsistent positions. Daybreak removed the case to federal court arguing that Lexington asserted a Carmack–Amendment claim rather than a breach-of-contract claim in the original petition, but Daybreak now argues that the Carmack–Amendment claim is a wholly-new transaction and does not relate back to the same original petition that it removed to federal court.

The majority focuses on the remand opinion and discusses federal preemption at length, concluding that Lexington's argument is foreclosed. The remand opinion on lack of subject-matter jurisdiction is not subject to appellate review even if clearly erroneous. *Dahiya v. Talmidge Int'l, Ltd.*, 371 F.3d 207, 209 (5th Cir.2004). It has no precedential value on a defense of preemption. *Smith v. Tex. Children's Hosp.*, 172 F.3d 923, 926 (5th Cir.1999). It is based solely on federal law and does not address Texas procedural issues. *Cf. Hampton v. Union Pac. R.R. Co.*, 81 F.Supp.2d 703, 705 (E.D.Tex.1999) (explaining that Texas Rule of Civil Procedure Rule 5 does not apply to removal proceedings, which are governed by federal law, not state law). The remand order does not control or limit the state court in its subsequent proceedings. *Seeligson's Ex'rs v. Tex. Transp. Co.*, 70 Tex. 198, 200, 7 S.W. 708, 709 (1888)

The district court's opinion was based on the pleading before it, in which the claim was styled as one for breach of contract. That ruling did not foreclose amendments to Lexington's pleading, and it does not address the state-law issue as to whether or not the Carmack–Amendment claim is a wholly-new, distinct, or different transaction or occurrence within the meaning of section 16.068. Moreover, under federal law, a party may remove a lawsuit based on an amended pleading. 28 U.S.C. § 1446(b). Daybreak could have removed the case to federal court again after Lexington amended its pleading to assert the Carmack–Amendment claim, but it chose not to do so.

In the original petition, Lexington described the damage to Burr's equipment during transit as the occurrence that was the subject of the settlement agreement. After Daybreak denied that a settlement agreement existed, Lexington, as Burr's subrogee, asserted Burr's tort cause of action under the Carmack Amendment.

**808**

That claim is not a new occurrence. *See Milestone*, 867 S.W.2d at 117 (tort claim for misrepresentations added to an original contract claim for indemnity was not a new transaction or occurrence).

Because the Carmack–Amendment claim is not barred by limitations, I therefore would address the remaining issues not reached by the majority.